## S. STEWART v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 17, 1896.

Nos. 9902—(178).

**Grain Elevators—Laws 1893, c. 64—Constitution.**

*Held*, that Laws 1893, c. 64 (G. S. 1894, §§ 7724–7729), entitled "An act providing for the erection of public grain warehouses and grain elevators on or near the right of way of railways, and providing for condemnation proceedings in connection therewith," is constitutional.

**Same—Right to Maintain Elevator—Who may Exercise.**

*Held*, further, that this statute authorizes a party who has erected a public elevator, and is operating it, on the site sought to be condemned, under a license from the railway company which has been revoked to take effect in the near future, to acquire the right and easement, to continue for a fixed term, to maintain and operate a public elevator on such site.

**Same—Damages—Evidence.**

*Held*, that there was competent evidence in this case for the consideration of the jury on the question of damages for the taking of such easement.

Petition in the district court for Stevens county for the purpose of acquiring the right, privilege, and easement of erecting and operating a public grain elevator on a site on the right of way of respondent railway company. The petition came on for hearing and assessment of damages before C. L. Brown, J., and a jury. The jury assessed the rental and compensation for the lands sought to be taken at one dollar per year, and in gross for the full term of 20 years at $20, and the findings and order of the court were in favor of petitioner, and from a judgment entered in pursuance thereof respondent appealed. Affirmed.

*M. D. Grover* and *Cyrus Wellington*, for appellant.

*Clapp & Macartney*, for respondent.

START, C. J.[2] The petitioner (the respondent herein), for the purpose of acquiring the right, privilege, and easement of erecting and operating a public grain elevator for the public, for hire, upon a site on the right of way of the appellant railway company, presented to

[1] Reported in 68 N. W. 208.        [2] Mitchell, J., absent, took no part.

it an application therefor on June 7, 1894.    The application was de-
nied, and thereupon the petitioner, on June 29, 1894, presented to
the district court his petition for condemnation of such right and
easement, under the provisions of Laws 1893, c. 64 (G. S. 1894, §§
7724–7729).    Such proceedings were had upon such petition that on
November 30, 1895, judgment was entered in the district court to the
effect that the petitioner was entitled to the privilege and easement
sought.    The railway company appealed from the judgment.

1. The first and controlling question presented by the record for
our consideration is the constitutionality of Laws 1893, c. 64, which
is entitled "An act providing for the erection of public grain ware-
houses and grain elevators on or near the right of way of railways,
and providing for condemnation proceedings in connection there-
with."

The material provisions of the statute may be summarized as fol-
lows:

Section 1 provides that any person or corporation desirous of erect-
ing and operating, at or contiguous to any railway station or siding,
a warehouse or elevator for the purchase, sale, shipment, or storage
of grain for the public, for hire, may make application for a site
therefor, containing a description of that part of the right of way of
the railway desired for such purpose, to the party owning, leasing,
or operating the railway, for the right, privilege, and easement of
erecting and maintaining such warehouse or elevator upon the right
of way at such station or siding within the outside switches of the
yard of such railway station or siding, upon paying a reasonable com-
pensation for such privilege.

Section 2 requires the applicant to state in his application the
amount which he deems such reasonable compensation, and make a
tender thereof; and, in case such application is denied by the party
to whom it is presented, such compensation shall be assessed by pro-
ceedings in the district court.

Sections 3 and 4 prescribe the procedure to be followed in the dis-
trict court as to the filing of the petition, notice to the railway com-
pany, trial, verdict of the jury, and judgment.

Section 5 provides that all elevators or warehouses erected and main-
tained under the provisions of this act shall be deemed public ele-
vators and public warehouses, shall be subject to legislative control,

shall be kept open for business for the public, for reasonable business hours, from September 15 in each calendar year to January 15 in each succeeding calendar year, and that any person, firm, or corporation failing to comply with the provisions of the act shall forfeit the rights, privileges, and easements acquired.

Section 6: Parties availing themselves of the act shall within 60 days after the amount to be paid for the easement is finally determined, by agreement or by proceedings in court, commence the erection of the warehouse or elevator stated in the application, and complete the same within 90 days, or the right shall be deemed to have been abandoned.

The appellant claims that the use for which the land may be taken by virtue of this statute is not a public use.   If such is the case, it is unconstitutional, for lands can only be acquired by the exercise of the power of eminent domain for a public use or purpose.   What is a public use is a judicial, not a legislative, question; but, if the use is public, the propriety of authorizing the exercise of the power of eminent domain in a particular case is exclusively a legislative question. The term "public use" is flexible, and cannot be limited to the public use known at the time of the forming of the constitution.   Any use of anything which will satisfy a reasonable public demand for public facilities for travel or for transmission of intelligence or commodities would be a public use.   Mills, Em. Dom. § 21.

The methods of transportation and trade customs relating to the handling, selling, and transporting of the products of this and other grain-growing states render grain elevators a practical necessity in the transfer of grain from the producer to the railway cars by which it is carried to the consumer.   They are connecting links in the chain of transportation between the farmers' wagons and the railway cars.   Their use in facilitating the handling, storage, and transportation of the products of the state is a public use, and subject to legislative regulation and control.   Rippe v. Becker, 56 Minn. 100, 57 N. W. 331; Munn v. Illinois, 94 U. S. 113; Budd v. New York, 143 U. S. 517, 12 Sup. Ct. 468; Brass v. North Dakota, 153 U. S. 391, 14 Sup. Ct. 857.   The use to which grain elevators for facilitating the transportation of the products of the state are devoted being a public use, the legislature may authorize the exercise of the power of

eminent domain in aid of such use.　Gurney v. Minneapolis Union E. Co., 63 Minn. 70, 65 N. W. 136.

We do not understand that the appellant seriously controverts this proposition.　Its claim is that the statute authorizes the party seeking the condemnation of land for an elevator site to use it, at his option, either for the purchase, or for the sale, or for the shipment of grain, or for the purpose of storing grain for the public for hire; that he may use the elevator exclusively for the purchase and sale of grain on his own account, at his option; that he may or may not use it for the storage of grain for the public for hire.　If this is the proper construction of the statute, if it is optional with the party whether he will use his elevator exclusively for his own private grain business or for the public purpose of facilitating the marketing and transporting of the products of the state, the statute cannot be sustained.　It would be unconstitutional, for the reason that it authorizes a party to exercise the power of eminent domain for a public or private use, at his option.　Where one construction of a statute will make it void for conflict with the constitution, and another would render it valid, the latter, if not a forced and unreasonable one, will be adopted, although the former, at first view, is otherwise the more natural interpretation of the language used.

The contention of the appellant requires us to construe the words of this statute, "for the purchase, sale, shipment or storage of grain for the public for hire," so as to limit the qualifying words, "for the public for hire," to the storage of grain.　Upon a first casual reading of the statute, we were inclined to the view that this was the natural interpretation of the language used.　But upon reading these words in connection with the title of the act, which declares that the purpose of the statute is to provide for public grain warehouses and elevators, and for condemnation proceedings in connection therewith, and also in connection with section 5 of the act, declaring all warehouses and elevators erected and maintained under the provisions of the act to be public, and subject to legislative control, we are of the opinion that the statute does not purport to authorize the condemnation of an elevator site for the purpose of carrying on an exclusively private business of buying and selling grain at the option of the party attempting to exercise the power of eminent

domain to acquire such site; and, further, that it was not the intention of the legislature by this act to authorize a party to acquire a site for an elevator, to enable him, at his option, to use it as a public elevator or exclusively as an instrumentality in his own private grain business; and that it has not done so.

When the statute is construed with reference to its title, and the abuses that it was intended to correct, and effect is given to all of the provisions of the statute, it is quite clear that the only construction which can be fairly and reasonably given to it is one in harmony with the constitution, viz. that the party is only authorized to acquire the right and easement for the purpose of operating a public warehouse or elevator for hire, for the public, for the purchase, sale, shipment, or storage of grain; that is, the party is authorized to acquire the easement for operating an elevator, not to enable himself to purchase, sell, and ship grain to the exclusion of the public, but to enable him to operate a public elevator for hire, to enable the public to use the elevator as an instrumentality for the purchase, sale, shipment, or storage of grain. The words of the statute, "for the public for hire," qualify not alone the words "storage of grain," but the words "purchase, sale and shipment" as well. The elevator for which a party is authorized to acquire a site under this statute is a public one, which the public—that is, all persons having occasion to do so—have the right, without discrimination, on equal terms and for reasonable charges to use, to enable them to purchase, sell, ship, or store grain. To illustrate. A farmer may wish to ship his grain by the car load, on his own account, and to do so economically it is necessary that he should have the right to secure elevator facilities at reasonable rates, and without discrimination, to enable him to handle, store, and ship his grain. Again, a man of limited means, having no elevator, may desire to engage in the grain business, but to do so he must have elevator facilities on equal terms with other dealers.

Now, to secure the building and operating of public elevators, to enable the farmer, the dealer, and the public generally to secure the necessary facilities for the purchase, sale, shipment, or storage of grain, and to prevent abuses and monopoly in the grain business, is the purpose of this statute. The use for which it authorizes the easement to be acquired is, therefore, public.

The petition and judgment in this case follow the letter of the stat-

ute, and the easement acquired by the petitioner by these proceedings is the right to operate a public elevator on the right of way of the appellant, and the petitioner's testimony on the trial as to what he intended to use the elevator for is not material. His intentions in the premises cannot enlarge the easement, or affect the decision of the question whether the statute authorizes the taking of land for other than a public purpose at the option of the party seeking to condemn a site for an elevator.

It is further claimed that this statute is class legislation, and denies to railroad companies the equal protection of the laws, for the reason that it authorizes the condemnation of a site for warehouses or elevators on their right of way, but does not subject the land of a private owner to a like burden.

It is difficult to see how any question of class or partial legislation can arise under this statute, for it is not the railway companies which are discriminated against, but the party seeking to condemn a site for an elevator is limited in his selection. The selected site must be at or contiguous to the railway station or siding, and between the outside switches of the yard. This limitation is not a favor to the party seeking a site, or a discrimination against the railway, but it is a limitation imposed for the benefit of the public, and is intended to secure the location of public grain elevators at such points that they can readily be connected by side tracks with the main track of the railway, so as to furnish convenient facilities to the public for economically handling and shipping the products of the state. The statute applies to all railway companies and to all land similarly situated, and is not class or partial legislation. The legislature, in its wisdom, has by this statute designated the property which it deemed appropriate for the maintaining of public elevators thereon, and has accordingly authorized its condemnation. The necessity or expediency of thus appropriating this particular property, and none other, is not a subject of judicial cognizance.

The appellant further claims that the statute is invalid, because the party seeking to condemn an elevator site is given the exclusive right of selection within the limitations of the statute, and the railway company is not given any right to submit to the court the question whether the taking of the particular piece of ground sought is necessary for a public use. We have no doubt that the party seeking to

acquire a site under this statute must act in good faith, and, if it was manifest to the court from his selection that he was acting in bad faith, and seeking to make use of the statute simply to oppress or blackmail the railway company by unnecessarily selecting as a site for his elevator the ground on which its station buildings were located, the court would have the power to prevent any fraudulent use of the statute. But, this aside, it is a question for the legislature whether property already appropriated to a given public use shall be taken for another public use.

"There is nothing better settled than that, the power of eminent domain being an incident of sovereignty, the time, manner, and occasion of its exercise are wholly in the control of the legislature, except as restrained by the constitution."

If the use is public, the necessity or expediency of appropriating any particular property is not for the courts. Fairchild v. City of St. Paul, 46 Minn. 540, 49 N. W. 325. The statute in question is a valid exercise of legislative power.

2. It appears from the petition, answer, and evidence in this case that the appellant is the lessee of the St. Paul, Minneapolis & Manitoba Railway Company, for the term of 99 years, of the land and right of way here in question. The appellant now claims that there is a defect of parties, because the Manitoba Company may have, during the period of 20 years—the term of the easement sought to be acquired in this case—an interest in the subject-matter of the condemnation proceedings, and should have been made a party thereto. No such interest appears on the face of the petition, or is alleged in the answer. The appellant cannot now raise the objection of a defect of parties, for such defect, if any there be, can only be taken advantage of by demurrer or answer; otherwise it is waived. Baldwin v. Canfield. 26 Minn. 43, 1 N. W. 261, 276, 585.

3. The trial court found as a fact that on or about October 1, 1891, the petitioner, by the permission and license of the appellant, erected upon the tract of land so sought to be condemned by this proceeding a complete grain elevator of about 40,000 bushels capacity, and has at all times maintained and operated such elevator thereon, and for the right, privilege, and easement of continuing so to maintain the same on such tract of land the condemnation proceedings herein were instituted. The court further found that the petitioner did not in-

tend to erect any other elevator on the land occupied by his elevator already in existence, and that the license under which the petitioner erected his elevator terminated July 15, 1894. It further appeared from the undisputed evidence that the elevator so operated by the petitioner was licensed as a public elevator under the laws of this state, and that he is still in the possession of the elevator and land on which it stands, but that prior to the filing of his petition herein he was notified by the appellant to remove his elevator from such tract within six months after such notice.

The appellant claims substantially that the statute relates only to the acquisition of a right to erect, and not of a right to continue to operate, an elevator which had been erected and was on the land at the time of the filing of the petition; hence under the undisputed evidence and the finding of fact the petitioner could not maintain these proceedings. The statute must receive a reasonable construction, and a mere statement of the facts in this case is all that is necessary to show that the construction claimed by defendant is extremely technical, and without merit. It is undisputed that on June 7, 1894, the petitioner owned the elevator in question, and whether he was in possession of the land under a verbal license without conditions, except what the law would imply as to the removal of his elevator, or under a special lease containing special conditions as to such removal, as claimed by the appellant, he then had the right to remove it. But he then knew that he could not continue to operate the elevator unless he acquired the right to do so under the statute. Now, if he had torn the elevator down, or moved it off the right of way, and then filed his petition, and, when he had acquired the right to operate it on its former site, he had erected or removed it upon the site, his proceedings would have been literally in accordance with the statute.

There is no warrant for the assumption that, if the petitioner could not have acquired the right to operate the elevator upon the location sought, he would not have removed his elevator before his right to the possession of the site ceased, or before he surrendered possession thereof. When the petition was filed, and the order of the court made thereon and served on the appellant, it had no right to or claim on the elevator, and the petitioner's right to remove it was still absolute. It is manifest that, except for the right given the petitioner to

acquire a site for his elevator, he would remove it while he had a right so to do, and not forfeit it to the appellant; hence there is no basis for the claim that the appellant would secure and operate the elevator when the petitioner was forced to vacate the site, and that the public gains nothing by the condemnation proceedings. The petitioner's condemnation proceedings were not an attempt to condemn property already in use for the very purpose for which condemnation was sought, for such use would cease, except for the condemnation proceedings; and the case of Minneapolis Western Ry. Co. v. Minneapolis & St. L. Ry. Co., 61 Minn. 502, 63 N. W. 1035, has no application to this case.

The object sought by the petitioner was to acquire the right to continue to operate his elevator on its then site, and his petition and proceedings were within the spirit, and in form with the letter, of the statute, and his rights cannot be defeated because the evidence shows that the right he seeks is to continue the use of his elevator, instead of a right to pull it down and put it up again. The law does not require a party to do a useless and foolish thing. He was not bound to take down or remove his elevator, and, when he had secured the easement sought, erect it on the location acquired. The trial court did not find that the petitioner erected the elevator under the special permit or lease containing conditions as to the removal of the buildings, as claimed by appellant, but that he erected the elevator by the permission and license of the appellant. The sufficiency of the evidence to support this particular finding is not raised by any proper assignment of error.

4. The last assignment of error urged by appellant in its brief is that no competent evidence was introduced to enable the jury to assess the damages; that is, either the annual or the gross rental value of the premises. This claim is not sustained by the record.

The appellant offered no evidence on the question, and by no assignment of error is the sufficiency of the damages awarded questioned. Upon this question the petitioner testified that he had experience in the renting of sites for elevators from railroad companies, and knew the rental value of the site in question, and, without any objection being made as to his competency, he testified as to annual rental value and the gross rental value of the site for 20 years. Other witnesses gave similar testimony, but their competency

was challenged by proper objections and exceptions; but the rulings of the court in receiving the evidence are not assigned as error. Each of the witnesses, including the petitioner, stated on cross-examination, in effect, that his opinion was based on what the railroad companies were accustomed to charge as rental for similar sites, and that one of the matters taken into consideration by the companies in fixing the annual rent was the benefits they would secure from the business of the elevator. We are of the opinion that the value of this evidence was for the jury, and that it sustains the award of damages.

Judgment affirmed.

CANTY, J. I concur in the foregoing opinion, but my reason for holding that the statute is not class legislation, and therefore unconstitutional, because it authorizes only the condemnation of the railway right of way for a site for the elevator, and does not authorize the condemnation of private property adjoining the right of way, which private property is sometimes equally as available as an elevator site, is as follows: The legislature has undoubted constitutional power to give the petitioner a right to select either a site on the right of way or on private property (Cooley, Const. Law [5th Ed.] 668), and the constitutional provision was not intended to prohibit this. If the legislature has the power to delegate to the petitioner the right to select the right of way, it must have the power to make the selection itself, as the power is peculiarly a legislative one. The fountain cannot rise higher than its source. The delegated power cannot be greater than the source of that power. It is clearly, then, a case where the clause of the constitution prohibiting class legislation does not apply.