**RANGE OIL SUPPLY COMPANY, a Minnesota Corporation, Complainant,**

**v.**

**CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, Respondent.**

**Civ. No. 5354.**

United States District Court
D. Minnesota, Fourth Division.
Nov. 21, 1956.

Gordon Rosenmeier, Little Falls, Minn., for plaintiff.

Philip Stringer, St. Paul, Minn., for defendant.

DEVITT, District Judge.

This matter began as a proceeding before the Minnesota State Railroad & Warehouse Commission. The Commission entered an order adverse to appellant, Range Oil Supply Company; an appeal was taken to the state district court and was removed to this court by petition of respondent, Rock Island, under 28 U.S.C.A. §§ 1441, 1446. This court held the case was properly removed to federal court and denied appellant's motion to remand. Range Oil Supply Company v. Chicago, R. I. & P. R. Co., D.C.Minn., 140 F.Supp. 283.

Appellant, herein referred to as Range Oil, filed with the Commission a verified complaint pursuant to Minn.Stat. Annotated, § 230.10 requesting that certain property owned by respondent Rock Island, be set aside for use by Range Oil as a public warehouse. M.S.A. § 230.09 provides:

> "Any person, firm, or corporation shall have the right to use as a site for a public elevator, warehouse, coal shed, ice-house, buying station, selling station, or weighing scales or other instrumentalities for weighing live stock, or use ground space for receiving, storing, or distributing any article of commerce, transported or to be transported, a proper portion of the right of way of any railroad within the outside switches at any station or siding upon the payment of reasonable compensation therefor."

M.S.A. § 230.10 provides that any party seeking this right may file a complaint with the Railroad & Warehouse Commission; provision is made for notice and a hearing. If the complainant is entitled thereto, the Commission may enter

appropriate orders establishing a site for the ground space or buildings contemplated. M.S.A. § 230.11. After a hearing, the Commission entered an order dismissing Range Oil's complaint.

A recital of the relationship of the parties prior to the commencement of these proceedings is needful. The following facts found by the Commission are essentially uncontested and are supported by the evidence.

In 1940 the Rock Island Railroad leased to Range Oil a certain plot of land in an industrial area of downtown Minneapolis. This property measures approximately 100 feet by 132 feet and is adjacent to a spur track of the Rock Island. The lease provided that the premises were to be used by Range Oil exclusively for the location of tanks for the storage of gasoline. The lease was supplemented in 1943 and rental was then fixed at $180 per year. The Range Oil Supply Company is a Minnesota corporation engaged primarily in the retail sale of light fuel oils. Range Oil constructed on the property several large storage tanks, a gasoline service station, and other appurtenant facilities, totalling an investment of from $65,000 to $80,000. The lessor-lessee relationship continued until September of 1954 when Rock Island gave notice of termination of the lease. Range Oil continued in possession of the land until May of 1955 when Rock Island commenced an action for Forcible Entry and Unlawful Detainer in the state court. Range Oil pleaded guilty to this action and judgment of restitution to respondent Rock Island was entered, but execution was stayed pending the outcome of this proceeding, which came before the Railroad & Warehouse Commission at that time.

After notice of termination of the lease was given, the parties were unable to reach any amicable agreement concerning the future use of the property; Range Oil filed its complaint seeking to compel the use of the property under M.S.A. §§ 230.09, 230.10 and 230.11, cited above. Actions brought under these provisions are in the nature of eminent domain proceedings. Stewart v. Great Northern Ry. Co., 65 Minn. 515, 517, 68 N.W. 208, 33 L.R.A. 427.

Range Oil is not a public warehouse, nor does it intend to become one. The complaint filed with the Commission was filed in the name of Range Oil, but it was revealed at the hearing that Range Oil intended to hold the property for the use of Liquid Storage, Inc., an affiliate of Range Oil, whose management is almost identical with that of Range Oil. Testimony of Earl Hacking, vice-president of both Range Oil and Liquid Storage, Inc., disclosed that Liquid Storage is presently licensed as a public warehouse in Duluth and St. Paul, Minnesota, and intends to operate in that capacity on the property in question after obtaining a warehouse license in Minneapolis.

Range Oil has attacked the order, rulings and findings of the Commission as unlawful and unreasonable. The ground for jurisdiction is diversity of citizenship; no federal question is involved.

This court, sitting, in effect, as another state court, Guaranty Trust Co. of New York v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079, must look to state law to determine what power it may exercise on review of an order of the Commission. M.S.A. § 216.25 provides that the findings of fact of the Railroad & Warehouse Commission shall be prima facie reasonable, and that the appellant carries the burden of proof raised on appeal. If the order is found lawful and reasonable, the court must affirm and enforce the order. If the court finds otherwise, the order must be set aside.

In Re Minneapolis & St. L. R. Co. (State, Railroad & Warehouse Commission v. Minneapolis & St. L. R. Co.), 209 Minn. 564, 572, 297 N.W. 189, 193, the Minnesota Supreme Court stated the guiding principles for a reviewing Court to follow:

"On appeal from an order of the commission the court examines the whole matter in controversy to de-

termine whether the evidence reasonably tends to support the findings of fact upon which the order must be based and to examine the questions of law arising from such facts. In deciding an appeal, the court, for lack of power, does not assume to exercise the functions of the commission and to substitute its own findings for those of the commission. Nor does it act on its own conception of the wisdom of the order brought before it for review. It decides only the judicial questions whether the order is reasonably supported by the evidence and whether it is lawful and reasonable. It does not try the case *de novo*. * * *

"The lawfulness and reasonableness of the commission's order is to be tested by whether it kept within its jurisdiction, whether in arriving at its decision it was guided by the controlling rule of law * * * or acted capriciously and at pleasure, and whether the evidence fairly supports the findings on which its conclusions rest."

See Twin City Motor Bus Co. v. Rechtzigel, 229 Minn. 196, 38 N.W.2d 825; Northern Pac. Ry. Co. v. City of Duluth, 243 Minn. 84, 67 N.W.2d 635.

Thus, exercising only a limited scope of review, we proceed to an examination of the findings of the Commission.

██ Separating the wheat from the chaff, it appears that the essential finding of the Commission is contained in these words from Paragraph VI of its "Report, Findings of Fact and Order."

"It does not appear that the plaintiff will make any different use of the site sought than it has in the past, and it appears that the past use has been for private purposes only. * * * The property is not being used * * * for public use."

I interpret this as a finding that the property will not be used for a public purpose. If the evidence reasonably tends to support this finding and it is lawful, the order must be affirmed. Property cannot be taken for private purposes. Public use of the property is essential. Otherwise, the statute would be unconstitutional. Stewart v. Great Northern Ry. Co., 65 Minn. 515, 68 N.W. 208.

Mr. Earl Hacking, Vice President of both Range Oil Supply Company and Liquid Storage, Inc. was the principal witness for the complainant at the hearing before the Railroad & Warehouse Commission. He testified in part as follows, in response to questions put by Mr. Philip Stringer, attorney for the respondent:

"Q * * * The Range Oil Company, then, would continue to store, to service their trucks that deliver fuel oil just as they have in the past and continue to service those trucks from the same property? A That is right.

"Q And there would be no change, so far as that is concerned, in the method of the Range Oil Company's operations from the property so far as you know? A Well, there would be some change in it. The difference between operating from a warehouse and operating—which you don't own and operating from property that you do control.

"Q Well now, really, all the change would amount to, Mr. Hacking is this: that instead of servicing your fuel oil delivery trucks, as you do now, and filling them from the tanks on this property that the Range Oil Company would rent storage space from your subsidiary, the Liquid Storage Company, and put its oil into the same tanks that they are using now, and dispensing the oil into the same trucks they are using now, but would pay rent to your subsidiary, the Liquid Storage Company? A The term subsidiary isn't accurate.

"Q Well, affiliated. A Affiliated company. Otherwise, I would say that is essentially correct. We wouldn't have use for the entire storage facilities, even if we could

take it, but we would use those facilities to load retail trucks.

"Q And the only difference under the plan of operations which you are proposing for the Liquid Storage Inc., and what you are doing now is that other oil companies or owners of liquids would have the right to use your tanks if space existed for them for their accommodation. A That is right, for warehousing facilities.

"Q That is the only change you are contemplating from what you are doing now? A That is right, and the absence, if business increased, of erecting additional storage and so on."

The essence of this testimony is that the complainant would continue to operate his business under the proposed new arrangement essentially as it had done before. It will be recalled from the recital of the business dealings of the parties that complainant rented the premises from the respondent on a private or contractual basis. Later in his testimony, Hacking did state that a substantial part of the premises would be used by the complainant and that the remaining portion would be made available for public warehousing purposes.

I believe that Hacking's testimony, considered in its entirety, is sufficient to justify the finding that the complainant would use the property in question for a private, as distinguished from a public, purpose—especially when viewed in the light of the past dealings of the parties. There is an argument discernible in the record, and openly discussed in the briefs and at the oral argument, that complainant sought to employ this statutory eminent domain procedure as a last ditch resort to retain possession of the property following the breakdown of efforts to reach an agreement for continued rental. But regardless of the motives which prompted the filing of the petition, the findings must be evaluated in the light of the support, if any, which sustain them in the record of the hearing before the Commission.

We may not question the wisdom of the Commission's actions. I am limited to determining whether or not the findings are reasonably supported by the evidence. The statute makes the findings prima facie reasonable. The complainant has the burden to prove them otherwise. This it has not done. I conclude that the findings and order of the Commission are lawful and reasonable. The findings and order are affirmed.