## BOLIN LUMBER COMPANY AND OTHERS v. CHICAGO AND NORTH WESTERN RAILWAY COMPANY.

134 N. W. (2d) 312.

April 2, 1965—Nos. 39,450, 39,451, 39,452.

*Philip Stringer, Arthur J. Donnelly,* and *R. Paul Sharood,* for appellant.

*Mackall, Crounse, Moore, Helmey & Holmes, Perry R. Moore, Grant J. Merritt,* and *P. R. Griebler,* for respondents.

ROGOSHESKE, JUSTICE.

The Chicago and North Western Railway Company takes three appeals from an order of the district court affirming three separate orders of the Railroad and Warehouse Commission. The commission, after hearing evidence on the market value of three lots located in Windom, Minnesota, owned and let by the railroad, issued the orders setting the

amount of rent to be paid. The railroad makes but one assertion—that the commission does not have jurisdiction to regulate the rent.

The property in question was acquired by patent from the State of Minnesota in 1871 by the Sioux City and St. Paul Railway Company as part of a section of land upon which the business area of Windom eventually grew. In 1872, that company platted the city, reserving a 200-foot right-of-way north and south through the section. The Sioux City line conveyed this right-of-way in 1879 to St. Paul and Sioux City Railway Company, which in turn conveyed it to Chicago, St. Paul, Minneapolis, and Omaha Railway Company in 1881. In 1883, the Sioux City line also conveyed directly to Chicago, St. Paul, Minneapolis, and Omaha the blocks in Windom on which the properties involved in this lawsuit are located. All the property thus conveyed was held by that railroad until 1956, when it transferred all of its properties by general lease to the Chicago and North Western.

The three subject properties in this case have been rented to various lessees from time to time and were under lease to the respondents when the railroad sought to raise the rents. All three respondents own and maintain buildings on their lots, paying ground rent to the railroad under leases which are revocable by either party upon 30 days' notice. When the railroad, pursuant to a system-wide reevaluation of some 11,000 leases, requested a raise in rent, the tenants refused to pay the increase or paid it under protest and brought complaints before the Railroad and Warehouse Commission. Invoking its jurisdiction under Minn. St. 230.09, 230.10, and 230.11, they asked the commission to set reasonable rentals.

Section 230.09,[1] popularly termed the public elevator statute, gives any person the right to use railroad right-of-way for a purpose enumer-

---

[1]Minn. St. 230.09 provides: "Any person, firm, or corporation shall have the right to use as a site for a public elevator, warehouse, coal shed, icehouse, buying station, selling station, or weighing scales or other instrumentalities for weighing live stock, or use ground space for receiving, storing, or distributing any article of commerce, transported or to be transported, a proper portion of the right of way of any railroad within the outside switches at any station or siding upon the payment of reasonable compensation therefor."

ated in the statute. Section 230.10[2] provides that if such a person and the railroad cannot agree upon the portion of the right-of-way to be used or the compensation to be paid, a complaint may be filed with the Railroad and Warehouse Commission requesting it to determine the site and compensation. Section 230.11 grants power to the commission to make the orders requested.

All three subject properties lie to the east of the railroad tracks, bordering on Second Avenue (State Trunk Highway No. 60 and U. S. Highway No. 71) and separated from the main tracks by First Avenue. Both avenues run north and south parallel to the tracks. The Bolin and Olson properties face each other across Tenth Street, which intersects the avenues, and Gjertson is located on Eighth Street.

The Bolin Lumber Company is an ordinary lumberyard selling retail to the general public. Although a spur line of the railroad reaches one of its four sheds, only its cement goods are unloaded directly from freight cars. The remainder of its goods, although shipped by rail, is delivered by truck from the railroad cars. When Bolin acquired the lumberyard in 1961, rental of $263.15 was increased to $600 annually.

---

[2]Section 230.10 provides: "Any such person, firm, or corporation desiring to construct, operate or use a public elevator, warehouse, coal shed, ice-house, buying station, selling station, or weighing scales or other instrumentalities for weighing live stock, or use ground space for receiving, storing, or distributing any article of commerce transported or to be transported, or to continue the use and operation of any such buildings, structures, instrumentalities, or ground space where the same are already constructed or used, upon such right of way of any railroad, if unable to agree with the person, firm, or corporation operating such railroad upon the site for such buildings, structures, instrumentalities, or ground space or the compensation to be paid therefor, may file a verified complaint with the Railroad and Warehouse Commission setting forth the facts and requesting it to establish the location of the site for such buildings, structures, instrumentalities, or ground space or the compensation to be paid therefor, or both, as the case may be. Such complaint shall be served upon such railroad company and 20 days, exclusive of the day of such service, shall be allowed for answer. After the time for answering has expired the commission shall fix the time and place for a hearing and give at least ten days notice thereof to both parties."

In March 1962, the railroad again attempted to raise the rent, this time to $2,500. The commission found that $900 was a reasonable figure.

The property leased to Jesse O. Olson is subleased to his son-in-law, who runs an automobile agency. The business, located in one building owned by Olson, makes rare use of railroad facilities. In 1962, the railroad attempted to raise the rent from $288 to $2,060 annually. This was later reduced to $1,854, which was paid under protest. The commission fixed rent at $600 a year.

M. J. Gjertson is the assignee of a lease from the man from whom he bought his farm implement sales and repair business. Two buildings are located on the property. Since business activity has declined, it is no longer feasible to receive freight carload shipments, so now most of the farm equipment is transported by truck. When the enterprise was acquired in 1959, the ground rent was $123; in 1961, it was $143.69; for 1962, $164. In that year, the railroad attempted to raise it to $900. The commission found that $270 a year would be a reasonable rent.

At every conceivable point before the commission and on appeal before the district court, the railroad raised the objection that §§ 230.09, 230.10, and 230.11 did not contemplate that the commission would have jurisdiction to regulate rents on property such as that involved in this case. The commission found, however, as to each lessee, "That complainant-lessee uses the site as a warehouse for receiving, storing, and distributing articles of commerce transported or to be transported and that said site lies within the outside switches of the railroad station of the respondent, Chicago & North Western Railway Company at Windom." Apparently, the commission took jurisdiction without finding that the sites were located on the right-of-way or that their use was, in any sense, "public."

The memorandum of the district court states a number of reasons for upholding the commission's jurisdiction, but apparently the court's conclusion was based on the following propositions. The court reasoned that the subject properties were located on railroad right-of-way because the land could be used for that purpose. Further, the court felt

that the statutory requirement that the enterprises be public was satisfied by the fact that they offered goods to the public. Finally, the court concluded that the complainants stored goods that were transported or they were in a location where transportation might be effected, notwithstanding Olson's and Gjertson's present absence of rail shipments. Upon review in this court, we accept the facts as found by the commission and decide only whether the commission was vested with jurisdiction to fix the level of rents to be paid for the leased properties.[3]

That jurisdiction, if it is to be found at all, must be found in the statutory grant of power in §§ 230.09 and 230.10, in so far as the latter statute refers to the former. Section 230.10 sets a number of requirements for regulation of rent by the commission. First, the site of the property rented must be "upon such right of way," i. e., "a proper portion of the right of way of any railroad within the outside switches at any station or siding," as defined by § 230.09. Second, the property must be used for one of the specific purposes designated, such as an elevator, warehouse, etc. Third, the designated use must be a public use. Quite clearly, jurisdiction cannot be based solely upon the fact of ownership of the property by the railroad.

Upon the facts before us, the properties in question were not devoted to a public use, and this alone would be sufficient to dispose of this appeal.

In our opinion, it was intended that the railroad properties subject to rent-control jurisdiction by the commission be devoted to a public use. We reach this conclusion because we perceive that the power granted by the statutes is in the nature of eminent domain and, as such, can only be exercised under the constitution where the expropriation is for a public use.[4] Such an interpretation was placed on the statutes by the commission in denying a request of an oil company under § 230.09 for lease of a site for use as a warehouse upon findings

---

[3]State and R. & W. Comm. v. Minneapolis & St. L. R. Co. 209 Minn. 564, 297 N. W. 189.

[4]Minn. Const. art. 1, § 13, provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

that the company's proposed use would be for private purposes only. These findings were affirmed in Range Oil Supply Co. v. Chicago, R. I. & P. R. Co. (D. Minn.) 146 F. Supp. 285, affirmed (8 Cir.) 248 F. (2d) 477, where the Federal court, sitting under diversity jurisdiction, reviewed the commission's order. In that case, after the railroad had terminated its lease, the complainant sought to invoke the commission's power to compel a continuation of the lease of a site on the right-of-way upon which it had been operating a retail filling station for use as a public warehouse. The commission dismissed the complaint,[5] explaining:

"It does not appear that the plaintiff will make any different use of the site sought than it has in the past, and it appears that its past use has been for private purposes only. * * * Private use of railroad property does not lend itself to public use. We do not believe that the statute intended that the respondent must give up the use of a valuable site to an unqualified applicant. If the complainant is permitted to use said premises for a private purpose, it would in effect prevent public access to a means of transportation and use of the property that was intended to be for the benefit of the public."

Even though the complainant in that case requested the lease of a site, the effect is essentially the same as in the instant case where the compensation to be paid is sought to be fixed. In both cases the substantive statute relied upon is § 230.09, and § 230.10 provides the procedural guidelines; and, in both cases, the complainant is put, "without the consent of the company, into possession of a portion of its land, with right of exclusive control, use, and occupation, ousting the company therefrom."[6]

Thus, the statutes, in effect, authorize an expropriation of railroad property for a public and not a private use. Section 230.10 does not stand alone merely to regulate rent, for replacement of the railroad's possession with the complainant's extends far beyond the state's power

[5]Railroad and Warehouse Commission Order No. A-7391, December 20, 1955.

[6]State v. Chicago, M. & St. P. Ry. Co. 36 Minn. 402, 404, 31 N. W. 365, 366.

to regulate a railroad as a common carrier. That regulatory power reaches no further than to compel performance of the railroad's duty to the public.[7] Railroad property, whether acquired by purchase or condemnation, is held for a specific public purpose; but so far as the right of property is concerned, it is private property and cannot be taken unless done so within the structures of the constitution.[8]

Because the authority delegated by §§ 230.09, 230.10, and 230.11 is in the nature of eminent domain and because property cannot constitutionally be taken under them unless for a public use, we read them as containing that qualification even though it might have been more clearly expressed. As we pointed out long ago in Stewart v. G. N. Ry. Co. 65 Minn. 515, 68 N. W. 208, 33 L. R. A. 427, where we also concluded that a forced conveyance of land through the aid of statutes such as these would be unconstitutional if required for a private purpose, we must construe the statutes, if possible, so that they will not conflict with the constitution.[9]

It thus appears proper to construe the statutes as though the word "public" preceded each enumerated use. The legislature has power to declare what constitutes a public use, and our duty lies in following that declaration, subject only to our independent determination of constitutionality.[10]

Considered in the light of the purpose of the statutes—to make

---

[7]Cf. Pettit Grain & Potato Co. v. N. P. Ry. Co. 227 Minn. 225, 35 N. W. (2d) 127; James Quirk Mill. Co. v. Minneapolis & St. L. R. Co. 98 Minn. 22, 107 N. W. 742.

[8]We are supported in these general propositions by various authorities, all of which have held that the jurisdiction of a railroad or public service commission cannot be invoked to require conveyance or to set rents for property to be used for a private purpose. Missouri Pac. Ry. Co. v. Nebraska, 164 U. S. 403, 17 S. Ct. 130, 41 L. ed. 489; Ferguson v. Illinois Cent. R. Co. 202 Iowa 508, 210 N. W. 604, 54 A. L. R. 1; Bohn Lbr. Products Co. v. Michigan Public Serv. Comm. 317 Mich. 174, 26 N. W. (2d) 875; Chicago & N. W. Ry. Co. v. Railroad Comm. 197 Wis. 59, 221 N. W. 399.

[9]See, also, Minn. St. 645.17(3); In re Condemnation by Dairyland Power Co-op. 248 Minn. 556, 82 N. W. (2d) 56.

[10]Housing & Redevelopment Authority of St. Paul v. Greenman, 255 Minn. 396, 403, 96 N. W. (2d) 673, 679.

available facilities to aid in the transportation of goods—the term "public" requires that property taken under these statutes be used to provide facilities which the general public may enjoy. As we said in the Stewart case, construing statutes which were the predecessors of the ones here (65 Minn. 519, 68 N. W. 209):

"When the statute is construed with reference to its title, and the abuses that it was intended to correct, and effect is given to all of the provisions of the statute, it is quite clear that the only construction which can be fairly and reasonably given to it is one in harmony with the constitution, viz. that the party is only authorized to acquire the right and easement for the purpose of operating a public warehouse or elevator for hire, for the public, for the purchase, sale, shipment, or storage of grain; that is, the party is authorized to acquire the easement for operating an elevator, not to enable himself to purchase, sell, and ship grain to the exclusion of the public, but to enable him to operate a public elevator for hire, to enable the public to use the elevator as an instrumentality for the purchase, sale, shipment, or storage of grain."

The statutes do not seek to promote individual enterprise in railroad towns by offering rent-controlled property to entrepreneurs. They have a single, narrow purpose—to provide facilities through which persons of limited means may ship and receive goods. Thus, the requirement that the use be public compels property taken under these statutes to be open to the public for the use for which they were taken.[11]

Obviously, the complainants in this case do not fulfill that requirement. They operate businesses which are privately run. By no stretch of the imagination are these enterprises open to members of the general public to aid them in shipping or receiving their own goods. We

---

[11]It is significant, in ascertaining the intent of the legislature, that these statutes were first enacted in 1921, when the reigning constitutional test of a public use was that the public must have the right to use property for the use for which it was taken. See, In re Condemnation by Dairyland Power Co-op. *supra*; Minnesota Canal & Power Co. v. Koochiching County, 97 Minn. 429, 107 N. W. 405, 5 L. R. A. (N.S.) 638.

are convinced that §§ 230.09, 230.10, and 230.11 were not intended to apply in such cases.

We are also persuaded that under the circumstances the property cannot be considered part of the right-of-way. Pursuant to § 230.09, the commission's jurisdiction extends only to properties which are situated upon "a proper portion of the right of way of any railroad within the outside switches of any station or siding." If "within the outside switches" means no more than that the site lies between two lines drawn perpendicular to the tracks through the points of the outside switches, we can assume that the subject properties were so located. However, what was intended to be included in the phrase "right of way" is more difficult to discern. Clearly, mere ownership by the railroad is not sufficient. We believe that whether railroad property is right-of-way, within the contemplation of the statute, should depend upon both its use and location in each case. Most important, it cannot be characterized as right-of-way unless it serves the purpose of the statute, which is to make available lands so situated that transportation-connected enterprises thereon will accommodate the public in the transmission of goods by the carrier.

Taking these considerations into account, we conclude that the subject properties cannot be considered right-of-way. They are physically separated from the tracks and the area adjacent thereto by an intervening public street. They were neither acquired nor ever used to enable the railroad to discharge its duties as a common carrier. Historically, they have always been leased for commercial purposes and have not been used as railroad operating property, and their use has been substantially independent of the rail transportation of goods to and from Windom. They have always been on the local tax rolls as property subject to ad valorem taxes, and the rentals have been taxed by the state as ordinary income rather than treated as gross receipts upon which the state levies a gross earnings tax.

We cannot reasonably escape the conclusion that the commission had no jurisdiction to regulate the rents. Accordingly the order of the trial court is reversed with directions to enter an order vacating and setting aside the order of the Railroad and Warehouse Commission.

Reversed.