**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Plaintiff,**

v.

**CITY OF ROCHESTER, a Corporation, Defendant.**

**CITY OF ROCHESTER, Plaintiff and Condemnor,**

v.

**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Defendant and Condemnee.**

Nos. 1–71–Civ.–144, 1–71–Civ.–194.

United States District Court,
D. Minnesota,
First Division.

Sept. 13, 1971.

Stringer, Donnelly, Allen & Sharood, Philip Stringer, St. Paul, Minn., for Chicago and North Western Railway Co.

Gerald H. Swanson, City Atty., Rochester, Minn., for City of Rochester.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

The Chicago and North Western Railway Company brought this action (1–71–Civ–144) against the City of Rochester, seeking to enjoin it from taking possession of a portion of the railroad right-of-way located in the city of Rochester.[1] Civil Action 1–71–194 originated in April of 1971 as a condemnation proceeding before the Rochester Common Council.[2] The railroad appealed the condemnation award to the Minnesota District Court for Olmsted County and from there the action was removed by the railroad to this court. No petition for remand has been filed and it would appear that the removal was proper.

In March of 1970 the city petitioned the Minnesota Public Service Commission, seeking establishment of a grade crossing over the railroad right-of-way at the point in question.[3] A hearing was held by the Commission on May 12, 1970, at which time both the city and the railroad were represented. Testimony was received and on August 17, 1970, the Commission issued its order granting the city authority to establish the crossing. No appeal from this order was taken by the railroad.[4]

On August 16, 1971, a hearing on the railroad's motion for a preliminary injunction was held in this court. Thereafter, on September 1, 1971, a temporary restraining order was issued restraining the city from interfering with the railroad's use of its right-of-way until such time as a decision could be reached on the merits of the case.

The railroad seeks relief on four grounds. First the railroad contends that the property in question is presently dedicated to public use and that the proposed crossing would be inconsistent with this prior dedication thus the property is not subject to rededication for the inconsistent use. Secondly, the railroad claims that even if the property is subject to condemnation, the proceedings to condemn the land should not have gone forward under the provisions of the city charter but under Chapter 595 of the 1971 Minnesota Session Laws. Thirdly, the railroad argues that it is not estopped here from attacking the validity of the condemnation even in the face of the factual determinations made by the Minnesota Public Service Commission and its failure to appeal from these determinations. Finally, the railroad claims that the award given by the city commissioners was inadequate.[5]

It is contended by the railroad that the condemnation should have proceeded under Chapter 595 of the 1971 Minnesota Session Laws. A reading of § 30 of this chapter clearly indicates that, with an exception not here pertinent, the chapter applies only to proceedings commenced on or after September 1,

---

1. As the position of the parties in these two actions is reversed, they will be referred to as the "Railroad" and the "City."

2. Authority for this action is found in Rochester Charter §§ 195–210. These provisions have now been superseded by the provisions of Chapter 595, Minnesota Session Laws (1971) amending M.S.A. Chapter 117. See note 6, below.

3. The proposed crossing is located at Ninth Street S. E. in Rochester. Presently there is a crossing located at a point one-half block from the proposed crossing. The city plans to abandon the latter crossing if the Ninth Street crossing is opened. The new crossing would connect Ninth Street and service an area containing a new shopping center, a medical clinic, and a school. (Findings I & III, Minnesota Public Service Commission Report, Findings of Fact and Order, August 17, 1970).

4. M.S.A. § 216.24 provides, "Any party to a proceeding before the commission, or any party affected by any order thereof * * * may appeal therefrom to the district court of the county in which the complainants, or a majority of them, reside * * * at any time within 30 days after service of a copy of such order on the parties of record. * * * *"

5. The award given to the railroad by the city commissioners amounted to $3,500.00. The railroad estimates that the cost of constructing alternate facilities at a point away from the proposed 9th Street crossing would be $34,860.00.

1971.[6] As the condemnation proceeding in question was commenced in April of 1971, Chapter 595 does not apply and the city charter provisions were thus properly utilized.

■ The parties differ as to whether the property is subject to condemnation and whether the railroad should be precluded from attacking the validity of the condemnation by reason of the findings of the Public Service Commission. It should be noted that upon review of any action of the Commission, the court must sit in effect as another state court and must look to state law to determine what power it may exercise, and the scope of its review. Range Oil Supply Co. v. Chicago, R. I. & Pac. RR., 146 F.Supp. 285 (D.Minn.1956), aff'd, 248 F.2d 477 (8th Cir. 1957); State v. Chicago & N. W. Ry., 309 F.Supp. 56 (D.Minn.1970). The petition addressed to the Commission requested that it "authorize the establishment of a grade crossing * * * and determine all matters relative to said grade crossing * * *."[7]

The Commission indicated that it reviewed the testimony presented and made a thorough investigation of the matter prior to issuing its report. As to the use of the railroad right-of-way, the Commission found the rail traffic at the proposed location to be approximately 9 switch moves and 5 through trains each day, 6 days per week, between 8:30 a. m. and 4:30 p. m. Further, the Commission found that automobile traffic crossing the railroad at this point could build to approximately 5,000 vehicles per day.

■■ In its brief the railroad alleges that the yard is used for the storage of cars and assembling and making up of trains. Further the railroad claims that a street across such a yard would practically render it useless. Two reasons are advanced in support of this. First, the railroad claims that in such operations cars must be left standing while others are arranged and re-arranged. But M.S.A. § 219.383(4) prohibits the blocking of any public street by standing cars for more than ten minutes. The railroad claims that violation of this statute would be unavoidable if the area is to be continued in use as a classification yard. Further, in making up the trains the railroad claims the necessity of uncoupling cars and allowing them to coast free until they couple with the other cars on the track where the train is to be made up. The railroad argues that the opening of the street across the yard would render the yard unusable for this purpose as it would be undesirable from a safety standpoint to "kick" these unattended cars across the public street. But the railroad was represented before the Commission and apparently had opportunity to present these facts for its consideration. The findings of the Commission in regard to the use of these tracks do not reflect the use suggested. Had the railroad appealed from the findings of the Commission, court review would have been governed by M.S.A. § 216.25. This section provides in substance that the Commission findings of fact are prima facie reasonable. The scope of review thus is whether the order is found to be lawful and reasonable, and the appellant carries the burden of proof. Range Oil Supply Co. v. Chicago, R. I. & Pac. RR., 146 F.Supp. 285 (D. Minn.1956). The court may not substitute its findings for those of the Commission. State v. Minneapolis & S. L. Ry. Co., 209 Minn. 564, 297 N.W. 189 (1941). Since this is the scope of review and since when no appeal is taken from an order of the Commission the parties affected by the order are deemed to have

6. Section 30 provides, "This act takes effect September 1, 1971, and applies to eminent domain proceedings commenced on and after this date; provided, however, that the provisions of this act which allow life estate holders to receive moving or relocation expense payments are effective immediately upon the passage of

this act and apply to any trial of an appeal in which a verdict has not been rendered, and to any proceeding in which a commissioners' award has not been entered as of the date of passage."

7. The petition was presented to the Commission under the provisions of M.S.A. § 219.27.

waived the right to have the merits of the controversy reviewed by a court,[8] it would seem that in this collateral proceeding, the railroad may not present facts inconsistent with these found by the Commission.

Although the railroad may contest the validity of the condemnation itself, Minneapolis and S. L. Ry. Co. v. Village of Hartland, 85 Minn. 76, 88 N.W. 423 (1901),[9] any such attack would have to be based on the facts as found by the Commission. On the basis of these facts, the question of whether the initial condemnation itself was valid will be considered.

It is undisputed that the property in question is already dedicated to a public use. Clearly the general rule is that land already devoted to such a use may not be taken where the effect of this taking would be to extinguish or materially injure the prior use. Northwestern Tel. Exchange Co. v. Chicago, M. & St. P. Ry. Co., 76 Minn. 334, 79 N.W. 315 (1899). But the burden is upon the railroad to prove that the subsequent dedication for the street would restrict the use of the right-of-way and deprive the company of its beneficial use and enjoyment of this right-of-way. *Village of Hartland, supra.*

The railroad claims that the taking here falls within the rule of Milwaukee and St. P. Ry. Co. v. City of Faribault, 23 Minn. 167 (1876). In that case involving a road crossing of a depot yard, the court held that under the general power given to the city to lay out, open, alter, and vacate public streets, it was not intended by the legislature to give the right to exercise such power so as to necessarily destroy or essentially impair the value of an existing easement in property which had been created for a distinct public purpose. Later, in the case of St. Paul, Mpls. & Man. Ry. Co. v. City of Minneapolis, 35 Minn. 141, 27

N.W. 500 (1886), the court considered the ruling of the *City of Faribault* case and held that the mere fact the proposed street extension would necessarily cause more or less inconvenience and expense to the plaintiff is not of itself ground for equitable interference by the court. The court in *City of ·Minneapolis* sought to limit the earlier rule to situations where the ground is used for depot purposes, or set apart for the storage of cars, or used exclusively for the making up of trains. Here under the facts as determined by the Commission this is not the case. Further, the instant case is distinguishable from *City of Faribault* as there the yard in question was already crossed by three streets. Under those specific facts the court found that the opening and maintenance of an additional street would deprive the railroad of the use and enjoyment of the property for the public purpose to which it was dedicated. Here the Commission did not find this to be so.

Even if the railroad's allegations were here for initial consideration, two cases would require a finding that the street crossing is not necessarily inconsistent with the current use of the right-of-way. The railroad claims that if the crossing is opened it will have to move its tracks in the area. Speaking to a similar situation, the Minnesota Supreme Court held, "The fact that the railroad company will be required to rearrange its tracks * * does not conclusively show an essential impairment or an inconsistent use and is not, standing alone, sufficient to defeat the right of the municipality to open the street." Fohl v. Common Council of Village of Sleepy Eye Lake, 80 Minn. 67, 82 N.W. 1097, 1099 (1900). As to the desirability of the crossing, the fact that it would be undesirable or result in traffic congestion or danger is not an objection to the condemnation itself. Northern Pacific Ry. Co. v. City of Duluth, 153 Minn. 122, 189 N.W. 937 (1922).

---

8. M.S.A. § 216.25.

9. *See also* Minn. Att'y Gen. Opins dated October 31, 1930 and September 8, 1955

to the effect that the validity of the condemnation itself is a separate question.

It seems clear under applicable state law and under the facts as determined by the Commission that the dedication of the land for use as a street crossing will not result in a use inconsistent with the use to which the right-of-way is already dedicated. On this basis the railroad has failed to sustain its burden of proving that the initial condemnation was improper.

Therefore the temporary restraining order issued September 1, 1971, is vacated and the railroad's request for a preliminary injunction is denied. The parties are directed to promptly submit briefs directed to a consideration of the sufficiency of the condemnation award.