## STATE ex rel. CITY OF ST. PAUL v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

June 27, 1913.

Nos. 18,168—(25).

**Railway — duty at street crossings.**

1. There rests upon a railway company a common-law duty to bridge

[1] Reported in 142 N. W. 312.

---

Note. — On the question of the power to compel a railroad to establish or maintain at its own expense overhead or underground crossing, as affected by the fact that the street or highway is opened subsequently to construction of railroad, see note in 28 L.R.A.(N.S.) 298.

As to the duty of a railroad to construct bridges at its own expense over public drainage ditches, see note in 31 L.R.A.(N.S.) 1118.

or viaduct its tracks at street crossings, at its own expense, when it is reasonably necessary for the convenience and safety of the traveling public.

**Police power delegated to defendant city.**

2. The power to require a railway company to bridge or viaduct its streets is a police power resting in the legislature. A city has no such power except by delegation. Under its charter, the city of St. Paul has such power by delegation.

Upon the petition of the relator, the city of St. Paul, the district court for Ramsey county granted its alternative writ of mandamus directing defendant railway company to proceed forthwith to depress its tracks at the point where they cross West Seventh street in that city, in accordance with the provisions of its ordinance No. 3013, or show cause why it had not done so. The respondent's motion to quash the writ was overruled, Kelly, J. From the order overruling defendant's motion, it appealed. Affirmed.

*F. W. Root,* for appellant.

*O. H. O'Neill,* for respondent.

DIBELL, C.

This is a proceeding by mandamus on the relation of the city of St. Paul to compel the defendant railway company to depress and bridge its tracks where they intersect West Seventh street in the city of St. Paul. The defendant appeals from an order of the district court denying its motion to quash the alternative writ.

1. Whenever it is reasonably necessary for the convenience and safety of the traveling public it is the duty of a railway company to viaduct or bridge its tracks at their intersection with streets. This duty exists at common law. State v. St. Paul, M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047; State v. Northern Pac. Ry. Co. 98 Minn. 429, 108 N. W. 269, affirmed in Northern Pacific Railway Co. v. State, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. ed. 630.

2. The power to require a railway to bridge or viaduct streets is referable to the police power. It is a legislative power. The city has no such power in the absence of legislative delegation. The de-

fendant insists that such power has not been delegated to the city of St. Paul, and this is substantially its whole contention.

Section 116 of the charter of St. Paul provides that the common council shall have the care, supervision and control of the public highways, bridges, streets and alleys within the city, and shall cause all the streets which are open and graded under authority of the city to be kept open and in repair and free from nuisances. Section 125 provides that the common council may, by ordinance, provide for regulating and controlling the exercise by any person or corporation of any public right, franchise or privilege in any of the streets and public places of the city.

The powers conferred by its charter, Sp. Laws 1874, p. 109, c. 2, § 5, upon the city of Minneapolis, over its streets, are not more extensive than those which the St. Paul charter gives. Upon an examination of the record in State v. St. Paul, M. & M. Ry. Co. supra, involving a Minneapolis ordinance requiring the defendant companies to construct a bridge over their tracks, it appears that the specific claim here made relative to the delegation of power to the common council was there made, the claim of counsel for the railways, referring to the powers delegated to the common council, being stated thus [respondents' brief, p. 347] : "There is, therefore, nothing which can be claimed even remotely to suggest a power in the city council to impose the obligation here claimed upon the railway companies to bridge streets."

The view taken by this court was expressed as follows [page 388] :

"If the duty to construct and maintain the bridge in question rests upon the railroad company, either by force of the provisions of its charter, or at common law, it is clear that the city may enforce it. Its specially delegated supervision and control over streets and highways, with authority to lay out and open new ones, vest in it authority to enforce all appropriate regulations sanctioned by the police power of the state."

By an ordinance approved December 11, 1911, sufficiently reciting the necessity, the common council of St. Paul directed the defendant railway company to depress and bridge its tracks at their intersection with West Seventh street.

We have examined all the cases cited by counsel for the railway company. The case of City of Red Wing v. Chicago, M. & St. P. Ry. Co. 72 Minn. 240, 75 N. W. 223, 71 Am. St. 482, perhaps in effect overruled by later decisions, is not in point. We entertain no doubt that the delegation of authority to the common council is ample to authorize the enactment of the ordinance, and that a less specific delegation would be sufficient. The question presented by the appeal is decided by the Minneapolis case cited.

Order affirmed.