POLK COUNTY WELFARE BOARD v. STATE,
DEPARTMENT OF PUBLIC WELFARE.
SYLVESTER LINDSAY, RESPONDENT.

234 N. W. 2d 799.

August 22, 1975—No. 44686.

*John A. Winters*, County Attorney, for appellant.

*Warren Spannaus*, Attorney General, *Thomas L. Fabel*, Deputy Attorney General, and *Tibor M. Gallo*, Special Assistant Attorney General, for respondent State, Department of Public Welfare.

*Gray, Plant, Mooty & Anderson* and *Robert V. Bolinske*, for respondent Lindsay.

OTIS, JUSTICE.

These proceedings were initiated on behalf of respondent Sylvester Lindsay to require the Polk County Welfare Board to resume medical assistance payments pursuant to Minn. St. c. 256B for Mr. Lindsay's maintenance in the Good Samaritan Nursing Center in East Grand Forks, Minnesota. The welfare board refused to continue such support on the ground that Mr. Lindsay was not a Minnesota resident, and the matter was thereupon appealed to the Minnesota Department of Public Welfare. That agency reversed the decision of the welfare board and ordered the county to maintain Mr. Lindsay in the nursing center. The welfare board appealed that decision to the district court which upheld the action of the Department of Public Welfare. It is the district court order which is here for review. We remand for further proceedings in the district court.

The issues before us are complicated and difficult and have constitutional overtones. Shapiro v. Thompson, 394 U. S. 618, 89 S. Ct. 1322, 22 L. ed. 2d 600 (1969). Essentially, the question is whether a resident of North Dakota who comes to Minnesota for medical treatment and remains indefinitely for nursing home care becomes at some point a resident of Minnesota, thus imposing an obligation on this state for the patient's maintenance and support.

On the appeal of the matter to the district court, that court entered the following order and memorandum:

"ORDER FOR HEARING

"It appearing to the satisfaction of the court that new and additional evidence is material and necessary in order to make a more equitable disposition of each of the above proceedings, and that there were good reasons for failure to present such material evidence in the proceedings before the state agency,

"IT IS ORDERED, That a hearing be had before this court in the courtroom of the court house in the City of Crookston, Minnesota, on January 30, 1973, commencing at ten o'clock in the forenoon of that day, for the taking of new or additional evidence, including the testimony of witnesses, on each of the above appeals, and that further proceedings be had in accordance with the provisions of Minnesota Statutes § 256B.11.

Dated this 18th day of January, 1973."

"MEMORANDUM

"Examination and consideration of the decision of the state agency and of the records in each of the three appeals shows that some of the Findings are not supported by substantial evidence; that much of the hearsay evidence in the record does not have such probative value as is commonly accepted by reasonable men in the conduct of their affairs, and that additional and better evidence can and should be had.

"Polk County was not represented at the hearings before the Referee by the County Attorney or his assistant and it is quite apparent that because of their absence the County was greatly handicapped in the presentation of its evidence. Then too, the attorney for the nursing center may have been at a disadvantage because of the absence of material witnesses and the nonproduction of certain written evidence. All these matters considered, it appears that a determination of each appeal on its merits cannot be properly made on the basis of the present record, and in the event of appeal, the Supreme Court would not have an adequate record before it.

"January 30, next, is only a suggested date for the hearing and it can be reset to any date, prior to February 15, should any of the parties so request."

Notwithstanding the court's dissatisfaction with the state of the record which prompted the court to direct the parties to furnish further evidence, efforts to conduct further hearings were ultimately abandoned.

It may be significant that the three appeals mentioned in the court's memorandum of January 18, 1973, referred to Mr. Lindsay's case and, in addition, to related proceedings brought on behalf of Joseph Lepak and Esther Aakhus. With respect to the latter appeals, the trial court held that the decision of the commissioner of public welfare, which found Lepak and Aakhus eligible for medical assistance, was unsupported by substantial evidence, and we affirmed. Polk County Welfare Bd. v. State, Dept. of Public Welfare, 301 Minn. 513, 514, 223 N. W. 2d 137, 138 (1974). We there said:

"There is no dispute that appellants or someone in their behalf had the burden of proving before the commissioner that they intended to establish an abode in Minnesota in order to qualify for medical assistance. Both appellants were long-time residents in North Dakota. They were moved from North Dakota to a nursing home in East Grand Forks, Minnesota. Both appellants, by reason of their advanced age and deteriorated physical condition, were incapable of making a decision on their own behalf. The record of the evidence presented to the commissioner of public welfare on the issue of intent to change the place of abode was, as stated by the district court, hearsay, and 'does not have such probative value as is commonly accepted by reasonable men in the conduct of their affairs.'"

We held that the standard for review by the district court is fixed by Minn. St. 15.0425 and that the commissioner's determination may be reversed if the findings are unsupported by substantial evidence or are arbitrary or capricious. Although in

those cases we did not feel it was necessary to remand for further evidence, we have concluded that the issues raise policy questions of sufficient importance affecting comity between the states to make it advisable that we remand the matter before us for a plenary hearing in the district court. Under Minn. St. 256B.11, on appeals from determinations of the commissioner no new or additional evidence shall be taken unless such evidence in the opinion of the court is necessary to a more equitable disposition of the appeal. The trial court having made such a finding and having recited no reasons for reversing that conclusion, we are unwilling to pass on a matter having such broad implications without requiring the parties to comply with the court's initial order to furnish a record on which both the trial court and this court may decide the case with a full understanding of the facts and the law which applies.

Mr. Lindsay is an unmarried person, born on November 18, 1893, raised and educated in North Dakota, who worked and owned property in North Dakota and resided in that state until he was admitted to the Good Samaritan Nursing Center in East Grand Forks, Minnesota, on December 23, 1965. At that time he was a private patient received for medical care required for the treatment of lung cancer. In August 1966, Mr. Lindsay's family stopped paying for his maintenance, and it was assumed by Polk County. He was hospitalized in North Dakota for about 30 days in March and April 1967. He returned to the nursing center in April 1967 and has been there ever since. The welfare board terminated medical assistance for Mr. Lindsay on August 31, 1969. At the time of the hearing before the appeals referee of the Department of Public Welfare on August 19, 1971, the sum of $5,893.90 due the nursing center for Mr. Lindsay's care remained unpaid.

At the hearing before the appeals referee, the issue was whether Minnesota or North Dakota was financially responsible for Mr. Lindsay's medical care. There was testimony that after Mr. Lindsay returned to the home in April 1967, he became pro-

gressively weak and confused and at times irrationally belligerent. There was no question but that he was unable to take care of himself and that he would live out his life in the nursing center. The parties appeared to agree that whether Mr. Lindsay was a resident of North Dakota or Minnesota when public assistance terminated in 1969 would determine the question of which state was liable for his continued care in East Grand Forks, Minnesota.

The welfare board based its claim that Mr. Lindsay was not a Minnesota resident on three principal considerations. First, that Mr. Lindsay's continued ownership of real estate in North Dakota was conclusive evidence of his intent to return there; second, that Mr. Lindsay did not have mental capacity to form an intent to become a resident of Minnesota; and, third, that under Federal regulations the state where an indigent patient resides remains liable for his medical expenses if the purpose for his being in another state is for medical care.

With respect to the continued ownership of real estate in North Dakota, the evidence indicated that offers totaling $2,500 had been made to Mr. Lindsay or his representatives to purchase his property, that the offers were reasonable, and that they had been refused. Since the matter is to be reconsidered, we hold that there is no authority for basing residence on the mere fact of ownership in the state in which the patient originally resided. That is not to say, of course, that if such a patient retained a homestead in the state of his origin, it would not be evidence of his intent to return. As nearly as we can determine from this record, that is not the situation in the instant case. In any event, it is not a governing factor or one which should be treated as decisive.

The welfare board witness relied on the Federal Handbook of Public Assistance Administration and its supplements which directed the manner in which Title XIX of the Social Security Act should be construed. Under those regulations, an acting commissioner of the Department of Health, Education, and Welfare

had indicated that ordinarily an individual did not lose his residence in his own state where he has gone to another state for medical care or services, and that under those circumstances the state of his original residence would continue to be responsible for his medical care. This Federal policy is applicable where it is the general practice for residents of a particular locality to use medical resources outside the state or such medical facilities are used outside the state in accordance with plans developed jointly by the agency and the individual. However, none of these reciprocal arrangements was spelled out to indicate whether they applied specifically to the facts before the appeals referee. There was only a vague reference to a 1-year reciprocal arrangement between Polk County and Grand Forks County which was not reduced to writing.

Perhaps the most difficult factor to be considered is whether Mr. Lindsay was either capable of forming an intention or able to articulate an intention with respect to his residence when his assistance was terminated by the welfare board on August 31, 1969. Without other evidence, it would seem quite obvious that a person of Mr. Lindsay's age, then nearly 76, would have no reason to resume his residence in North Dakota, when he was suffering from lung cancer and had no resources other than property having a limited value, and in addition was being well taken care of for the remainder of his life in a nursing home in Minnesota. Nevertheless, in the light of the trial court's initial reluctance to decide the case on the sketchy evidence of intent then before it, and our own dissatisfaction with the failure of Mr. Lindsay to sustain his burden of proof, we are remanding for further testimony.

The appeals referee found only that Mr. Lindsay "entered the Minnesota nursing home in 1965 as a private paying patient, voluntarily and of his own free will. By this act, he clearly intended to make Minnesota his permanent abode * * *." The referee in addition held that the county was precluded from raising the residence issue after providing medical aid for him

from August 1966 to August 1969. These findings were adopted by the commissioner of public welfare.

The trial court in sustaining the commissioner relied on the facts that Mr. Lindsay has resided in the nursing center since 1965 and has never expressed a desire to leave. We hold that neither the findings of the commissioner nor those of the trial court are adequate to support the conclusion that Mr. Lindsay was a resident of Minnesota when the welfare board terminated his medical assistance and remand the matter for further evidence on the issues to which we have alluded, with directions to enter findings in sufficient detail to justify the court's conclusions and provide a record for review.

Remanded.