SOO LINE RAILROAD COMPANY,
petitioner, Appellant,

v.

MINNESOTA DEPARTMENT OF
TRANSPORTATION,
Respondent,

City of Bemidji, Respondent.

No. 51126.

Supreme Court of Minnesota.

March 13, 1981.

Wayne C. Serkland, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., and Gilbert S. Buffington, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Dept. of Transportation.

Eugene R. Ouradnik, City Atty., Bemidji, for City of Bemidji.

YETKA, Justice.

On February 24, 1978, the City of Bemidji requested the Minnesota Department of Transportation to investigate the closing of the Irvine Avenue bridge over the Soo Line Railroad tracks. Proceedings were conducted before a hearing examiner who recommended that a new bridge, 18 feet wide, be built at the expense of Soo Line Railroad.

Soo Line filed exceptions to the hearing examiner's report with the Commissioner of the Minnesota Department of Transportation. The commissioner agreed that a new bridge was needed, but concluded that it should be 28 feet wide, with the cost of the additional width to be borne by the Department of Transportation. Soo Line was ordered to build the bridge, and the Department of Transportation agreed to contribute $65,000 of the total cost. In all other respects, the hearing examiner's recommendation was adopted.

Soo Line petitioned for review in Hennepin County District Court. The district court affirmed the commissioner's order and Soo Line brought this appeal. We reverse and remand to the commissioner for the taking of additional evidence and for new findings.

At the south end of Irvine Avenue in the City of Bemidji lies a small residential district. It is situated on a peninsula that extends into a lake. Three streets connect this district with the main part of Bemidji—Irvine Avenue, Minnesota Avenue, and Park Avenue. These three streets run parallel to each other and provide the only motor vehicle access between this residential district and the rest of the city.

Two sets of railroad tracks intersect each of the three streets. One set of tracks is owned by Soo Line and the other by Burlington Northern. Because the railroad tracks separate this residential district from the rest of the city, any motor vehicle driving into or out of the residential district must cross both sets of tracks.

Park Avenue and Minnesota Avenue intersect the railroad tracks at grade crossings—where the tracks and the street are at the same ground level. Occasionally a train will block the grade crossings at both streets simultaneously. When this occurs, motor vehicle traffic cannot pass through.

Irvine Avenue crosses the railroad tracks with two overhead bridges. The bridge over the Burlington Northern tracks is presently in good condition, but the bridge over the Soo Line tracks is not.

In 1910 the Bemidji City Council requested Soo Line's predecessor, the Minneapolis, St. Paul & Sault Ste. Marie Railway, to erect a bridge over its tracks along Irvine Avenue. The railroad voluntarily complied with the city's request and the bridge was built at the railroad's expense. In October of 1975, after an inspection revealed the bridge had deteriorated, the bridge was restricted to traffic weighing less than 3 tons. One year later, Soo Line recommended to the city that the bridge be closed because it was unsafe for any traffic. The city barricaded the bridge, but pedestrians and snowmobiles continued to use it. Soo Line then removed the end spans on the bridge making passage impossible.

At the hearing, Soo Line proposed that the bridge be replaced with a grade cross-

ing. This proposal was rejected by the hearing examiner because the crossing would be blocked to automobile traffic when trains came through. The hearing examiner found that this would prevent firetrucks and ambulances from responding quickly to emergency calls, a problem that exists already at the other grade crossings. As a result, the hearing examiner concluded that a new bridge was needed for reasons of public safety. This conclusion was adopted by the commissioner.

The Irvine Avenue bridge is approximately 18 feet wide. The hearing examiner found that a new bridge of identical width would cost $107,000. All new bridges built over railroad tracks, however, are required to be 28 feet wide. Minn.Stat. § 165.06 (1980). Rebuilding the Irvine Avenue bridge to conform with this requirement was found to increase the cost of construction by 50 or 60 percent.

The hearing examiner recommended that the commissioner waive the statutory width requirement and permit the new bridge to be built to a width of 18 feet. The commissioner rejected this recommendation and ordered Soo Line to build the bridge 28 feet wide.

The hearing examiner also recommended that Soo Line bear the entire cost of building the new bridge. This recommendation was adopted by the commissioner with the exception that the Department of Transportation would contribute $65,000 toward the construction cost. This contribution was the approximate additional cost of building a new bridge 28 feet wide instead of 18 feet wide.

The commissioner entered an order in accordance with his modified findings and conclusions, and this order was affirmed in its entirety by the district court.

The issues raised on appeal are:

1. Does Minn.Stat. § 219.40 (1978) (amended 1980) require the cost of building a bridge over railroad tracks to be apportioned on the basis of benefits to the users?

2. Did the commissioner properly apportion the cost as required by the statute?

3. Were the commissioner's findings of benefits supported by substantial evidence?

At the initial hearing, Soo Line contested the need for a new bridge and argued that a grade crossing was a better alternative. That issue has not been presented to this court. As a result, the need for a new bridge is not disputed and the central issue in this appeal is how to determine who should pay for it.

■ 1. Soo Line argues that Minn.Stat. § 219.40 (1978) (amended 1980)[1] governs the apportionment of costs in this case and that this statute requires costs to be apportioned on the basis of benefits enjoyed by whoever uses the bridge.

At common law, railroads were required to erect bridges over their tracks at their own expense whenever the public safety required that this should be done. *See, e.g., State ex rel. City of St. Paul v. Chicago, Milwaukee & St. Paul Railway*, 122 Minn. 280, 281, 142 N.W. 312, 312 (1913). The City of Bemidji argues that this common-law rule is still in effect.

In 1923, however, the common-law rule was modified to empower a state agency to order railroads to build bridges with costs to be apportioned in a "just and equitable" manner among the parties affected. Act of Apr. 3, 1923, ch. 134, § 2, 1923 Minn.Laws 143, 143 (current version at Minn.Stat. § 219.40 (1980)); *see State v. Northern Pacific Railway*, 176 Minn. 501, 507, 223 N.W. 915, 917 (1929) (construing "just and equitable" standard in predecessor of section 219.-40; affirming order of railroad and warehouse commission that required state and railroad each to pay one-half the cost of building a bridge). A 1963 amendment to the same statute required costs to be apportioned "on the basis of *benefit* to the users."

---

1. The 1980 amendments do not affect those portions of the statute that the court is asked to consider in this appeal. Accordingly, they have no effect on the result in this case. *See*

Act of Apr. 11, 1980, ch. 534, § 36, 1980 Minn. Laws 641, 661; Act of Apr. 3, 1980, ch. 460, § 19, 1980 Minn.Laws 301, 316.

Act of May 3, 1963, ch. 458, § 2, 1963 Minn.Laws 688, 689 (current version at Minn.Stat. § 219.40 (1980) (emphasis added). This benefit standard has remained a part of the statute since that time.

In 1978 the statute provided:

If a complaint is made under section 219.-39, the commissioner shall determine whether the crossing is dangerous and may with or without a hearing require the railroad company complained of to provide flagmen at such crossing, or to adopt such safety devices as the commissioner may deem necessary for the proper protection of the crossing, or may require the removal of any structure, embankment or other obstruction to the view, or may require the crossing complained of or other crossing in the vicinity thereof closed, or it may require the railroad company to construct an overhead or maintain an underground crossing and divide the cost thereof between the railroad company, the town, county, municipal corporation, or state transportation department interested, on such terms and conditions as may seem *just and equitable.* Where the railroad has been constructed or the grade thereof lowered after the laying out of the highway and the railroad tracks are seven feet or more below the natural surface of the ground the commissioner may require the maintenance of an overhead bridge with suitable approaches and require the complaining city, town, or county to remove any embankment, structure or other obstruction to the view as may be reasonable and necessary to properly protect the crossing; provided, that no highway shall be laid out over any railroad so as to cross at the same grade until such crossing has been approved by the commissioner. If the complainant or the railroad files exceptions to an order of the commissioner made under this section without a hearing, the commissioner shall convene a hearing on the original complaint. If the commissioner or his designee after notice and hearing orders the installation of a safety device, or the construction, reconstruction, modernization or replacement of major parts, as defined by rule of the commissioner, of said safety device, gates, or other type of special protection, or the removal of a structure, embankment or other obstruction to the view, or orders the construction, reconstruction or maintenance of an underground or overhead crossing on any public road, street, or highway, he may in the same order direct that the costs thereof be divided between the railroad company and the public authority involved on such basis as the parties may agree, or, if they fail to agree, then the costs thereof shall be as determined by the commissioner or his designee *on the basis of benefit to the users of each* ; or the commissioner or his designee may *defer determination of the division of costs to a subsequent order to be made on the basis of evidence previously taken.* Where a state trunk highway is involved, the state's share of the costs shall be paid from any funds available to the department of transportation. In all other cases the public's share of the costs shall be paid from available funds or from the trunk highway fund, if ordered by the commissioner or his designee, or from any combination of the above or other available funds; provided that any highway, street or road fund shall only be expended for such costs on a highway, street or road within the political subdivision charged with the maintenance and care thereof and only upon the highways, streets or roads for which the fund was allocated, or for which the fund was created.

Minn.Stat. § 219.40 (1978) (amended 1980) (emphasis added).

This statute provides two standards for cost allocation. To paraphrase the first sentence, the Department of Transportation can order a railroad to build a bridge and apportion the cost in a "just and equitable" manner. The fourth sentence provides that, after a hearing, the cost shall be apportioned "on the basis of benefit to the users."

The hearing examiner concluded that the benefit standard and the just and equitable

standard should be interpreted together, finding that the benefit standard was the test of justice and equity when apportioning costs under the statute. The commissioner agreed with the hearing examiner's conclusion and incorporated it in his order.[2]

We find the language of this statute to be clear. Benefits to whoever uses the bridge must be considered when apportioning costs. The railroad, the hearing examiner, and the commissioner were correct in their view of how the statute should be interpreted.

2. Soo Line next contends that the benefit standard was applied improperly when the commissioner apportioned costs under section 219.40.[3] Specifically, Soo Line argues that the commissioner exceeded his statutory authority. *See* Minn.Stat. § 15.-0425(b) (1980).

■ Resolution of this issue depends in part upon how section 219.40 is interpreted. When reviewing an issue of statutory construction, this court is not bound by the agency's interpretation of the statute. *See Arvig Telephone Co. v. Northwestern Bell Telephone Co.,* 270 N.W.2d 111, 114 (Minn. 1978); *No Power Line, Inc. v. Minnesota Environmental Quality Council,* 262 N.W.2d 312, 320 (Minn.1977). Thus, we are free to make our own construction of section 219.-40.

By requiring costs to be apportioned on the basis of benefit to the users, the statute requires the commissioner to do three things. First, the commissioner must determine who are the users of the bridge. Second, he must determine what benefits accrue to each user. Finally, a comparison of benefits is required so that costs can be apportioned accordingly.

■ Minnesota's Administrative Procedure Act permits a reviewing court to reverse an agency's decision when the decision exceeds the agency's statutory authority. *See* Minn.Stat. § 15.0425(b) (1980). Soo Line argues that the commissioner exceeded his statutory authority in this case. In his order, however, the commissioner made specific findings of who would enjoy what benefit, and costs were apportioned on the basis of these findings. Therefore, the commissioner adhered to the statutory requirements and his decision does not exceed the authority granted by statute.

■ 3. But an administrative agency's decision also must be supported by substantial evidence. *See, e. g., St. Paul Area Chamber of Commerce v. Minnesota Public Service Commission,* 312 Minn. 250, 262, 251 N.W.2d 350, 358 (1977); Minn.Stat. § 15.-0425(e) (1980). Soo Line contends that the commissioner's findings of who would benefit from the bridge are not supported by the evidence, and because the order was based upon these erroneous findings, it must be reversed.

The commissioner found that Soo Line built the bridge voluntarily in 1910, and from that finding, the commissioner inferred there must have been some benefit to Soo Line because otherwise the bridge would not have been built. The order, however, does not specify what this benefit was.

Soo Line agrees that it was beneficial for the railroad to build the bridge in 1910 but contends this benefit no longer exists. It explains the reason for building the bridge as being the law in effect in 1910. At that time, a city had legal authority to compel a railroad to build a bridge at its own expense. *See, e.g., City of International Falls*

---

2. The City of Bemidji's position on how the statute should be interpreted is not exactly clear. Although the benefit standard is plainly stated in the statute, the city argues that the "just and equitable" standard is the only one to be found in that section. This argument seems to reject application of the benefit standard. On the other hand, the city also argues that the commissioner's conclusions are correct. Because the commissioner concluded the benefit

standard was applicable, the city also seems to support application of the benefit standard.

3. Respondent City of Bemidji, besides arguing that the commissioner's decision is correct, contends that Soo Line was not entitled to a hearing on the matter of apportionment of cost. This argument is without merit. The statute involved in this proceeding specifically allows a hearing. *See* Minn.Stat. § 219.40 (1978) (amended 1980).

*v. Minnesota, Dakota & Western Railway,* 117 Minn. 14, 19, 134 N.W. 302, 304 (1912); *State ex rel. City of Minneapolis v. St. Paul, Minneapolis & Manitoba Railway,* 98 Minn. 380, 402, 108 N.W. 261, 269 (1906). Since 1910, that law has been modified by statute. *See* Act of Apr. 3, 1923, ch. 134, § 2, 1923 Minn. Laws 143, 143 (adopting "just and equitable" standard for apportioning cost of bridge construction) (current version at Minn.Stat. § 219.40 (1980)). *Compare State ex rel. City of St. Paul v. Chicago, Milwaukee & St. Paul Railway,* 122 Minn. 280, 142 N.W. 312 (1913) (city has power to compel railroad to erect bridge over tracks) *with State ex rel. City of St. Paul v. Minneapolis, St. Paul & Sault Ste. Marie Railway,* 190 Minn. 162, 251 N.W. 275 (1933) (city cannot compel railroad to erect bridge over tracks when statute vests exclusive jurisdiction over such matters in state agency; construing predecessor to section 219.40).

Soo Line built the bridge in 1910 because to challenge the city's request would have been futile. Avoiding the expense of useless litigation was the benefit for the railroad at that time. But the city no longer has the power to order the bridge to be built so Soo Line would not enjoy this benefit if it was compelled to build a new bridge today.

In addition to his failure to specify how the railroad would benefit from a new bridge, the commissioner found that Soo Line had not shown that this unspecified benefit has dissipated. From this, the commissioner concluded that the benefit continues in the present. Soo Line presented its argument to the commissioner that the law has changed since 1910, and the benefit that existed then does not exist today. But the order contains no reference to this argument so we cannot determine whether the commissioner gave it any consideration.

■ The commissioner's finding of a benefit to Soo Line from construction of a new bridge is not supported by substantial evidence in the record. Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Minneapolis Van & Warehouse Co. v. St. Paul Terminal Warehouse Co.,* 288 Minn. 294, 299, 180 N.W.2d 175, 178 (1970) (quoting 4 K. Davis, *Administrative Law Treatise* § 29.02 (1978)). Because the commissioner failed to specify what the railroad's benefit was, it is impossible to determine whether this conclusion is supported by any evidence at all.[4] Soo Line explained what this benefit might have been, demonstrated that it no longer exists, and no evidence in the record controverts that position. Thus, the commissioner's finding that Soo Line enjoys the same benefit from the bridge as it did in 1910 does not have adequate evidentiary support.

■ The commissioner also found there would be no benefit to the City of Bemidji from construction of a new bridge. This conclusion was based on the premise that the city gained no benefit from having the Soo Line tracks intersect Irvine Avenue. Again, the evidence in the record does not support such a finding.

At the hearing, much testimony was devoted to explaining why a bridge was essential for the public safety of the city's residents. This testimony indicated the city would gain some benefit from use of the bridge. Although the commissioner acknowledged this fact, he found no inconsistency in his conclusion that the city would not benefit because the presence of the Soo Line tracks was the sole cause of the hazard that created the need for the bridge.

The logic of this conclusion cannot be sustained. Even if the city receives no benefit from the Soo Line tracks and the tracks are the sole cause of the hazard, it does not follow that the City of Bemidji receives no benefit from the bridge. Automobile traffic never benefits from the presence of railroad tracks on a public street, and railroad tracks always create some hazard when they intersect a road. Under the commis-

4. In addition, the commissioner's finding of a benefit to Soo Line, without specifying what the benefit was, could be considered arbitrary and capricious. *See* Minn.Stat. § 15.0425(f) (1980).

sioner's logic, there would never be any circumstances under which public travelers would benefit from a bridge constructed over railroad tracks. The statute cannot be interpreted this way. *Cf. City of St. Paul v. Chicago & North Western Transportation Co.*, 436 F.Supp. 628, 631 (D.Minn.1977) (construing benefit standard of section 219.-40; upholding state agency's cost allocation of $84,000 to railroad, $75,000 to state, and remaining $932,000 to city because agency could have found no benefit to railroad and substantial benefit to motoring public from construction of new bridge); *Northern Pacific Railway v. City of Duluth*, 243 Minn. 84, 90, 67 N.W.2d 635, 638–39 (1954) (construing "just and equitable" standard of section 219.40; affirming order requiring both city and railroad to pay one-half of bridge construction cost because substantial "benefits" occur to each; case arose before benefit standard became part of statute); *County of Chester v. Pennsylvania Public Utility Commission*, 47 Pa.Cmwlth. 366, 370, 408 A.2d 552, 554 (1979) (upholding apportionment of 25% of cost to county for building bridge over railroad tracks because bridge would improve fire and ambulance service and give children safer path to walk to school).

In this case, the commissioner's finding of no benefit to the city is supported only by questionable logic. Thus, the requirement of substantial evidence has not been satisfied.

Because the commissioner's order rests on findings that do not have adequate evidentiary support, the order cannot be sustained. Apportionment of costs in this case requires a comparison of benefits and those benefits must be supported by substantial evidence.

▮ The commissioner could have found that the bridge would benefit both the city and the railroad. This appears to be the logical conclusion. Public safety benefits to the city already are reflected in the record. Benefits to the railroad could include a diminished exposure to risks of tort liability because there would be less motor vehicle traffic at the grade crossings, and trains would not have to move to permit emergency vehicles to cross the tracks when a train blocks the grade crossings. This list of possible benefits is not exhaustive, but it does indicate that an appropriate disposition of this case is a remand to the commissioner so evidence regarding benefits can be considered before a new order is issued. Remand is an appropriate remedy when the factual record is insufficient to sustain a proper apportionment under the statute. *See, e.g., Polk County Welfare Board v. State*, 305 Minn. 219, 226, 234 N.W.2d 799, 804 (1975); *Bryan v. Community State Bank of Bloomington*, 285 Minn. 226, 232–34, 172 N.W.2d 771, 775–76 (1969); Minn. Stat. § 15.0425 (1980).

On remand to the Department of Transportation, the commissioner should consider the following in apportioning costs:

1. Potential benefits to the railroad because a new bridge would reduce automobile traffic at the Park Avenue and Minnesota Avenue grade crossings. Reduced traffic would decrease the likelihood of a train colliding with an automobile, thereby diminishing the railroad's exposure to risks of tort liability. The reduced potential for collisions would also provide greater safety for the railroad's vehicles, the freight it carries, and its employees. Reduced traffic at the grade crossings would have the additional benefit of decreasing the likelihood that a stalled automobile would block the grade crossings and impede the movement of trains.

2. Potential benefits to the railroad because emergency vehicles would use the bridge. Trains would not have to move when an emergency vehicle needs to cross the tracks at a grade crossing.

3. Potential benefits to the railroad because a new bridge would require less maintenance than the old bridge. If the benefits from cost savings that result from less maintenance are not considered, railroads would have an incentive to allow bridges to deteriorate knowing that a municipality or other public body might shoulder a substantial portion of the cost of building a new bridge.

4. Potential benefits to the city because motorists could cross the tracks with improved safety. Bemidji's citizens, by crossing the tracks on a bridge instead of a grade crossing, would not suffer inconvenience by waiting at the crossing for a train to pass and would enjoy a reduced risk of injury from the decreased likelihood of collision with a train.

5. Potential benefits to the city because citizens would have quicker access to emergency services. Firetrucks and ambulances would not be required to use the grade crossings. Because these vehicles would never have to wait for a train to pass, a bridge would allow them to respond to emergencies without delay.

6. Potential benefits because a bridge would provide safer and improved access for trains servicing Bemidji. The city would enjoy economic benefits from improved rail service and the railroad company would enjoy profits from improved service to the city.

There may be other benefits that the parties will demonstrate at the new hearing or that the commissioner will discover through his own expertise. Because we do not know how important these and other possible benefits will be, we cannot make the comparison of benefits that will determine the proper allocation of costs. This we leave to the commissioner.

The case must be reversed and remanded to the commissioner for the taking of additional evidence, for new findings, and for a proper apportionment of costs of construction of the new bridge consistent with this opinion.

Reversed and remanded.