## NORTHERN PACIFIC RAILWAY COMPANY v. CITY OF DULUTH.[1]

October 22, 1954.

No. 36,391.

---

[1]Reported in 67 N. W. (2d) 635.

*Harry E. Weinberg* and *Dale MacIver*, for appellant.

*M. L. Countryman, Jr.*, and *H. B. Krengel*, for respondent.

*Orville C. Peterson*, for League of Minnesota Municipalities, *amicus curiae*.

*Charles A. Sawyer* and *D. J. Shama*, for City of Minneapolis, *amicus curiae*.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court affirming an order of the state railroad and warehouse commission.

On August 18, 1950, the Northern Pacific Railway Company petitioned the railroad and warehouse commission for an order requiring the city of Duluth to contribute toward the cost of reconstructing, maintaining, and repairing the Lake avenue viaduct located in that city. A hearing was held before the commission at Duluth on October 5, 1950.

The commission found that the Northern Pacific Railway Company was seeking an apportionment between itself and the city of $22,644.81, which represents the cost of repair, reconstruction, and maintenance of the Lake avenue viaduct. The commission also found that in 1949 the Lake avenue viaduct was in need of repair; that inspection of the premises was made by both petitioner and the city and the extent of the necessary work agreed upon; that it was also agreed that petitioner would do the work without prejudice to its right to demand contribution; and that petitioner has now made the necessary repairs. The commission next found that both parties receive very substantial benefits from the viaduct; that the railway company has seven tracks under the viaduct and is able to use the area for extensive assembling and switching operations; and that the city benefits to the extent that Lake avenue is a heavily traveled thoroughfare and the viaduct serves as a

grade separation not only over the railway tracks but also over Railroad street and Michigan street. The commission further found that a just and equitable formula for the apportionment of costs of reconstruction, maintenance, and repair of this bridge is to apportion to the railway company the cost of all repairs, maintenance, and reconstruction of the substructure, superstructure, abutments, and piers, including the floor beams, girders, et cetera; and to apportion the costs of the reconstruction, maintenance, and repair of the wearing surface, the sub-deck, the curbs, sidewalks, and handrailing equally between the city and the Northern Pacific Railway Company.

In determining the cost of the repairs made to the Lake avenue viaduct which are to be apportioned between the city and the Northern Pacific Railway Company in accordance with the above finding, the commission found that the cost of renewing the wearing surface and the sub-deck of the structure was $18,558.14 on the approaches to the bridge; that the cost of renewing the curb was $487.83; and that the cost of repairing the balance of the deck was $498.52; or a total of $19,544.49.

On May 12, 1952, the commission ordered the city to contribute, as its just and equitable proportion of the cost of reconstruction, repair, and maintenance performed by the Northern Pacific Railway Company on the Lake avenue viaduct during 1949 and the early part of 1950, $9,772.25, which is 50 percent of the cost of repairs to the wearing surface, sub-deck and curb.

The city of Duluth appealed to the district court from this order. The district court affirmed the order appealed from, and the city appealed to this court seeking a reversal of the judgment entered.

■ It is the position of the city that the order of the commission and the judgment of the district court affirming that order are contrary to law because of failure to comply with M. S. A. 219.39 and that they are not supported by the evidence. The city contends that the proceedings are governed by §§ 219.39 and 219.40. Section 219.39 reads:

"Upon written complaint authorized by a majority vote of the members of the council of any city or village, or by the board of supervisors of any town, or board of county commissioners of any county in this state, or by the commissioner of highways, filed with the commission, by the chief executive officer of the city or village, the chairman of the board of supervisors or the county commissioners, or the commissioner of highways, as the case may be, that any railroad crossing with any street in the city or village, or town or county road, or state aid road or trunk highway, is dangerous to life and property, and giving the reasons therefor, the commission shall proceed to investigate the matters contained in the complaint, giving the complainant and the railroad company an opportunity to be heard, at a time and place to be fixed by the commission, after such notice as the commission may deem reasonable; provided, that at least one public hearing shall be held in the town, village, or city, in which the crossing is located."

Section 219.40 reads:

"The commission shall decide the matter set forth in the complaint and make a report in writing thereof, including findings of fact, and make such order as it shall deem proper in the premises and, if the commission shall find the crossings to be dangerous, it may require the railroad company complained of to provide flagmen at such crossing, or adopt such safety device as the commission may deem necessary for the proper protection of the crossing; or it may require the removal of any structure or embankment from the right of way of the railroad company, or it may require the railroad company to construct an overhead or maintain an underground crossing and divide the cost thereof between the railroad company, the town, county, municipal corporation, or state highway department interested, on such terms and conditions as to the commission may seem just and equitable. Where the railroad has been constructed or the grade thereof lowered after the laying out of the highway and the railroad tracks are seven feet or more below the natural surface of the ground, the commission may require the maintenance of an

overhead bridge at least 18 feet wide with suitable approaches and require the complaining city, village, town, or county to remove any embankment or structure from the streets or town or county roads as in its opinion may be reasonable and necessary to properly protect the crossing; provided, that no highway shall be laid out over any railroad so as to cross the same grade until such crossing has been approved by the commission."

The city argues that, under these two sections of the statute which were adopted together, a proceeding for dividing the cost of viaduct repair between a railway company and a city must be instituted by the city. In further support of its argument, the city cites Dayton Rural Tel. Co. v. Northwestern Bell Tel. Co. 188 Minn. 547, 551, 248 N. W. 218, 219, where the court said:

"* * * The jurisdiction of the commission can be invoked in such a proceeding only by a compliance with the statutory methods therefor."

In that case the statute under which the proceedings were held required that the petition state the facts constituting the alleged omission or offense and further required that cause be shown by answer within 20 days. These two requirements were not complied with, in that the letter which was treated as a petition did not state the facts constituting the alleged omission or offense and, in addition, the commission gave only 11 days' time on the order to show cause instead of 20 days, as required by statute. The court therefore properly held that jurisdiction was never acquired.

We do not feel that the above case is controlling under the record in the instant case inasmuch as the issue here is not whether jurisdiction can be acquired without complying with the terms of the statute but, rather, whether the statutes quoted above actually do require that the proceedings be instituted only by those enumerated before the commission can acquire jurisdiction. Therefore, the question becomes one of whether or not the legal maxim "The expression of one thing is the exclusion of another (Expressio unius est exclusio alterius)" is applicable to this case. This maxim is not of universal

application, and great caution is needed in its application. Kelly v. City of Minneapolis, 63 Minn. 125, 65 N. W. 115, 30 L. R. A. 281. Also, the maxim is only a rule of construction and not of substantive law and serves only as an aid in discovering legislative intent when not otherwise manifest. 6 Dunnell, Dig. & Supp. § 8980; United States v. Barnes, 222 U. S. 513, 32 S. Ct. 117, 56 L. ed. 291.

The precise issue has not arisen in this state before, although a question very similar to the one at bar has been passed upon in the state of Michigan. In City of Detroit v. Public Utilities Comm. 288 Mich. 267, 286 N. W. 368, it was decided, under a statute giving municipalities a right to petition the public utilities commission to fix rates, that a private consumer of the utility could invoke the jurisdiction of the commission. In thus holding, the court quoted from Taylor v. Public Utilities Comm. 217 Mich. 400, 405, 186 N. W. 485, 488, in which the writer of a concurring opinion stated (288 Mich. 293, 286 N. W. 377):

"* * * it is difficult for me to conceive that it was the legislative intent to so circumscribe the power of the commission as to prohibit it from acting under the facts disclosed by this record except on the application of the municipality. In permitting the municipality to institute proceedings, I do not conclude that it was the legislative intent to exclude all other proceedings."

We feel that the reasoning in the above case is equally applicable to this case. If we were to hold otherwise, it would mean that neither the railroad and warehouse commission nor railroad companies could initiate proceedings with respect to dangerous crossings because neither is mentioned in § 219.39 as one entitled to institute proceedings. It does not seem that the legislature could have intended such a result.

It is therefore our opinion that, by failing to expressly name railroad companies in § 219.39, the legislature did not intend to preclude a railroad company from making an application to the commission, under the facts and circumstances here, for an order permitted to be made by the commission under § 219.40.

■ The second contention of the city is that the district court erred in denying the city's motion for a conclusion of law that the commission's order of May 12, 1952, is inequitable, unjust, unreasonable, and arbitrary, is not supported by the evidence, and is contrary to law.

In deciding an appeal the court, for lack of power, does not assume to exercise the function of the commission and to substitute its own findings for those of the commission. Nor does it act on its own conception of the wisdom of the order brought before it for review. It decides only the judicial questions whether the order is reasonably supported by the evidence and whether it is lawful and reasonable. It does not try the case *de novo*. State and R. R. & W. H. Comm. v. Minneapolis & St. L. R. Co. 209 Minn. 564, 297 N. W. 189; State v. Tri-State T. & T. Co. 204 Minn. 516, 284 N. W. 294; Chicago & N. W. Ry. Co. v. Verschingel, 197 Minn. 580, 268 N. W. 2, 709; Steenerson v. G. N. Ry. Co. 69 Minn. 353, 72 N. W. 713.

Here, it is apparent from the record and the commission's findings that both parties received very substantial benefits from the existence of the viaduct. The railway company is able to use the area for extensive assembly and switching operations, and the city of Duluth benefits in that Lake avenue is a heavily traveled thoroughfare and the viaduct acts as a grade separation not only over the railway company tracks but also over Railroad street and Michigan street. We have examined the record and find that there is evidence to support this finding; therefore, the district court did not err in affirming the order of the commission.

Judgment affirmed.