**CITY OF SAINT PAUL, a Municipal Corporation of the State of Minnesota, Complainant-Appellant,**

v.

**The CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Respondent.**

**No. 3–76 Civ. 61.**

United States District Court, D. Minnesota, Third Division.

July 8, 1977.

Harriet Lansing, St. Paul City Atty. by Jerome J. Segal, Asst. City Atty., St. Paul, Minn., for complainant-appellant.

Philip Stringer, Stringer, Donnelly, Courtney, Cowie & Rohleder, Ltd., St. Paul, Minn., for defendant-respondent.

## MEMORANDUM ORDER

## FACTS

ALSOP, District Judge.

On July 18, 1921, the Council of the City of St. Paul ("City") adopted an ordinance directing the Chicago, St. Paul, Minneapolis & Omaha Railway Company, the predecessor of the Chicago & North Western Transportation Company ("Railroad"), to construct and thereafter maintain a bridge over the Railroad's tracks and right-of-way at White Bear Avenue. Thereafter the Railroad constructed a two-lane bridge at that location and maintained it up to the time construction of a new bridge commenced.

On October 4, 1974, the City filed a petition with the Minnesota Public Service Commission ("PSC") in which the City asked the PSC to order the replacement of the presently existing bridge at White Bear Avenue with a four-lane structure and to apportion the costs of reconstruction and future maintenance between the City and the Railroad on an equal basis. On April 18, 1975, the PSC conducted a hearing before a hearing examiner. On September 9, 1975, the PSC made findings of fact and issued a proposal for decision. On January 28, 1976, after exceptions were filed and oral argument had, the PSC entered its order which required the Railroad to pay $83,730.00 and the State to pay $75,000.00 toward the construction cost of the new bridge, allocated the remaining costs of construction to the City [1] and provided that all future maintenance costs be borne by the City. On February 27, 1976, the City appealed from the order of the PSC to the Ramsey County District Court.

## JURISDICTION

■ The City is a Minnesota municipal corporation. The Railroad is a Delaware corporation with its principal place of business in Chicago, Illinois. The amount in controversy exceeds $10,000.00, exclusive of interests and costs.

The proceedings involving the City and the Railroad became judicial proceedings at the time that the City appealed from the order of the PSC. Minn.Stat. § 216.25; *In Re Chicago, M., St. P. & Pac. R.R.*, 50 F.2d 430, 432 (D.Minn.1931). Because there was diversity of citizenship between the City and the Railroad and because the amount in controversy exceeded $10,000.00, the statutory minimum, the action brought in state court was one of which this court also has original jurisdiction. 28 U.S.C. § 1332. When the Railroad filed a timely and appropriate petition, the action was properly removed to this court. 28 U.S.C. § 1441.

## SCOPE OF REVIEW

■ It is clear that this court is to apply state law when it sits and hears cases in which subject matter jurisdiction is predicated on diversity of citizenship. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, this court is required to apply Minnesota law to the case presently before it.

Recently the Supreme Court of Minnesota had the opportunity to define the scope of review to which courts are to confine themselves in their review of the action taken by an administrative agency. In *Reserve Mining Co. v. Herbst*, Minn., 256 N.W.2d 808, 827 (May 27, 1977), that court held that

the scope of review by the district court . . . is whether or not the decisions . . . are lawful and reasonable, a test which we equate with whether or not they are affected by errors of law; and whether or not their findings are unsupported by substantial evidence; and whether or not their conclusions are arbitrary and capricious.

1. The remaining costs were estimated to be $931,591.27.

BENEFIT OF CONTINUING
GRADE SEPARATION

■ The City's first contention is that the PSC's decision of January 28, 1976, is unlawful and unreasonable because it contains an erroneous interpretation of Minn. Stat. § 219.40. That statute provides:

If the [PSC] after notice and hearing . . . orders the construction, reconstruction or maintenance of an underground or overhead crossing on any public road, street, or highway, it may in the same order direct that the costs thereof be divided between the railroad company and the public authority involved on such basis as the parties may agree, or, if they fail to agree, then the costs thereof shall be determined by the [PSC] on the basis of benefit to the users of each . . . .

From the findings contained in the January 28, 1976, decision it is clear that the PSC interprets the term "benefit" to exclude any advantage a railroad obtains from the continuation of a grade separation which results from the reconstruction of an overhead crossing. The City argues that the continuation of a grade separation results in some benefit and that the PSC's interpretation is therefore unreasonable. The court does not agree.[2]

The determination of what constitutes a benefit is one which the legislature has specifically left to the PSC. When the legislature has left a matter to determination by an administrative body, a reviewing court's function is limited to an examination as to whether or not there has been a fair hearing and whether or not the statute in question has been applied in a just and reasonable manner. See Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301 (1941). All that is required in order to find the PSC's decision to be lawful is that its interpretation of Minn.Stat. § 219.40 have a reasonable basis in law. See NLRB v.

Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

The PSC provided no explanation in support of its interpretation of Minn.Stat. § 219.40. However, the Railroad suggests that there are three matters which the PSC may have considered and which would serve as rational bases for the PSC's interpretation.

The Railroad's first suggestion is that the PSC determined that reconstruction intended solely to facilitate travel by the motoring public provides no ascertainable benefit to a railroad. The Railroad suggests that such an interpretation would be consistent with the City's admitted purpose in seeking replacement rather than repair of the existing bridge—elimination of the bottleneck caused by the two-lane bridge on a four-lane thoroughfare.

The Railroad's second suggestion is that the PSC concluded that reconstruction of overhead grade crossings provide no benefit to railroad's in terms of grade separation.[3] The Railroad contends that such a conclusion is warranted because, although both the railroad and the motoring public do benefit from the original creation of a grade separation, neither the railroad nor the motoring public obtains additional benefit because of grade separation at the time an overhead crossing is reconstructed. The grade separation factor is said to remain unchanged by reconstruction of the overhead crossing.

The Railroad's final suggestion is that the PSC concluded that its interpretation of "benefit" should parallel that of the United States Department of Commerce. The Department of Commerce has determined that reconstruction of existing grade separation structures results in no ascertainable benefit to the railroads. Bureau of Public Roads, Policy & Procedure Memorandum 21–10 § 5(b)(2) (1958). The Railroad contends that the PSC may well have deter-

**2.** The court has not been directed to, nor has it found, any Minnesota Supreme Court decision which interprets the "benefits to the users of each" formula contained in Minn.Stat. § 219.40.

**3.** The City concedes that its primary reason for seeking to replace rather than to repair the

bridge which crosses the Railroad's tracks at White Bear Avenue is to eliminate the bottleneck caused by a two-lane bridge which connects two segments of a four-lane thoroughfare.

mined to mesh its interpretation of Minn. Stat. § 219.40 with federal policy.

The court is not convinced that the PSC had no rational basis for its interpretation. It is clear that any of the Railroad's suggestions might have served as a basis for the PSC's interpretation. Moreover, the court is not convinced that the PSC's interpretation is explicitly contrary to law. Therefore, even if the court deemed the PSC's interpretation to be unwise, it would be obligated to uphold the PSC's interpretation and to affirm its order. *City of Minneapolis v. Minneapolis Transit Co.*, 270 Minn. 133, 133 N.W.2d 364 (1965). Because the City has failed to demonstrate that the PSC's interpretation is unreasonable and unlawful, the interpretation is upheld. *Northern Pac. Ry. v. City of Duluth*, 243 Minn. 84, 67 N.W.2d 635 (1955); *State v. Northern Pac. Ry.*, 229 Minn. 312, 39 N.W.2d 752 (1949).

## LACK OF SUBSTANTIAL EVIDENCE

 The City's other contention is that the PSC's finding that the Railroad's benefit from being relieved of the costs of future repairs is limited to $83,730.00 is unsupported by substantial evidence. The City contends that the record contains no substantial evidence for the PSC's finding both because the estimate which the PSC accepted did not purport to cover all of the costs of the repairs which were then required and because the estimate made no allowance for savings on future maintenance. The court does not agree.

It is true that Roy Grieder, a civil engineer employed by the City, testified that certain repairs would have been required in order to avoid replacing the White Bear Avenue Bridge and that he had estimated the cost of such repairs to be $335,900.00. However, other competent evidence as to the repairs required and their costs was also received. M. C. Christensen, a civil engineer employed by the Railroad, testified that a lesser amount of repairs would have been required and that he had estimated the costs of those repairs to be $36,000.00. Henry D. Hahn, another civil engineer em-

ployed by the Railroad, testified that he had estimated the costs of required repairs to be $70,000.00. Harold R. Sandberg, a civil engineer and the president of Alfred Benesch & Company, testified that certain specific repairs would have been required[4] and that he estimated the costs of such repairs to be $83,730.00.

The court is bound to accept the findings of the PSC if that finding is supported by substantial evidence. Minn.Stat. § 15.0425; *Reserve Mining Co. v. Herbst, supra; Dakota County Abstract Co. v. Richardson*, Minn., 252 N.W.2d 124 (1977); *Minneapolis Van & Warehouse Co. v. St. Paul Terminal Warehouse Co.*, 288 Minn. 294, 180 N.W.2d 175 (1970); *Gibson v. Civil Serv. Bd.*, 285 Minn. 123, 171 N.W.2d 712 (1969). The PSC's finding that the costs of repairs would have been $83,730.00 is supported by the testimony of Mr. Sandberg, the only independent expert to testify. The most that can be said for the City's position that the $83,730.00 estimate was inadequate is that the City established that there was a conflict of evidence before the PSC and that the PSC might reasonably have chosen a higher figure. In order to maintain an appropriate balance between the functioning of administrative agencies in discharging their delegated duties and the functions of courts in reviewing the adjudicative determinations of such agencies, it is necessary that the court approach with deference the conclusions reached by such agencies in resolving conflicts in evidence and testimony. *Quinn Distrib. Co. v. Quast Transfer, Inc.*, 288 Minn. 442, 181 N.W.2d 696 (1970). This need for judicial deference to administrative factfinding is sufficient to and does preclude this court's reversal of the PSC's finding.

Likewise, the court is unable to sustain the City's exception to the PSC's finding that the Railroad obtained no benefit by virtue of its being relieved of the obligation to maintain the old bridge at White Bear Avenue. Indeed, no evidence was offered which might serve to establish the costs of continuing to maintain the old bridge. The only evidence touching the issue of mainte-

---

4. The Sandberg testimony was based on personal investigation and was presented in detail.

nance costs is Roy Grieder's testimony that a *new* bridge would require virtually no maintenance for ten or more years. Therefore, because there was no evidence as to the estimated cost of future maintenance to the *old* bridge, the court would have been required to reverse for lack of substantial evidence any PSC order which had allocated a benefit to the Railroad based upon the Railroad's being relieved of the costs of future maintenance to the old bridge. Thus, the court affirms the PSC's finding concerning the benefit obtained by the Railroad as one supported by substantial evidence.

Upon the foregoing,

IT IS ORDERED That the appeal of the City of St. Paul from the January 28, 1976, order of the Minnesota Public Service Commission be and hereby is denied, and the decision of the Commission is affirmed.

IT IS FURTHER ORDERED That the Clerk enter judgment affirming the decision of the Minnesota Public Service Commission in *In Re Replacement of White Bear Avenue Bridge* (Docket No. R–3371 D–4637) dated January 28, 1976.