In the Matter of the WELFARE
OF THE CHILD OF R.S.
and L.S., Parents.

No. A10–1390.

Court of Appeals of Minnesota.

Jan. 25, 2011.

Review Granted March 1, 2011.

Mark D. Fiddler, Fiddler Law Office, P.A., Minneapolis, MN, for appellant guardian ad litem.

Darlene Rivera, Rebecca McConkey, and James H. Schlender, Jr. (pro hac vice), White Earth, MN, for respondent White Earth Indian Child Welfare.

Brett Corson, Fillmore County Attorney, Lee Novotny, Assistant County Attorney, Preston, MN, for respondent Fillmore County.

Considered and decided by SCHELLHAS, Presiding Judge; HUDSON, Judge; and ROSS, Judge.

## OPINION

HUDSON, Judge.

On appeal, appellant-guardian ad litem contends that the juvenile court erred in granting respondent-tribe's motion to transfer this preadoptive-placement proceeding to tribal court. Although the transfer-of-jurisdiction provisions of the Indian Child Welfare Act (ICWA) and the Minnesota Indian Family Preservation Act (MIFPA) do not authorize or prohibit the transfer of this preadoptive-placement proceeding to tribal court, Minnesota Rule of Juvenile Protection Procedure 48.01, subdivision 3, specifically permits such a transfer. We therefore affirm.

## FACTS

The facts are undisputed. S.S. was born on January 27, 2010, to R.S., who is not Indian, and L.S., who is a member of respondent White Earth Band of Ojibwe (tribe). R.S. and L.S. have six children in common, five of whom have previously been removed from their care and custody for abuse and neglect. Only S.S. is the subject of this action.

Immediately after S.S.'s birth, respondent Fillmore County Social Services Department contacted the tribe to confirm S.S.'s eligibility for membership and to inform the tribe that the county would be filing a petition to terminate parental rights. On February 4, 2010, the tribe notified the county that S.S. was eligible for membership and that the tribe would intervene in the anticipated termination-of-parental-rights proceeding. On February 5, 2010, the county filed an expedited petition for termination of parental rights, and the juvenile court issued an emergency order awarding the county temporary care, custody, and control of S.S.

On February 10, 2010, the juvenile court issued an order stating that the proceeding would be dismissed and jurisdiction transferred to the tribe if the tribe intervened and assumed jurisdiction prior to March 9, 2010. On February 22, 2010, the tribe notified the juvenile court that it was exercising its right to intervene but not its right to assume jurisdiction and transfer the proceeding to tribal court. The tribe therefore requested that the juvenile court reconsider the portion of its February 10,

2010, order stating that the tribe's intervention would trigger a transfer of jurisdiction. The juvenile court subsequently recognized the tribe as a party to the proceeding but never specifically ruled on the tribe's motion for reconsideration.

On April 29, 2010, the juvenile court terminated the parental rights of R.S. and L.S. with respect to S.S. The juvenile court ordered that S.S. remain in the custody of the county and later ordered that S.S. be transferred to the custody of the commissioner of human services so that she could be placed in a permanent home.[1] On June 16, 2010, the tribe filed a motion to transfer the case to tribal court; the county supported the motion. Appellant-guardian ad litem (GAL) objected to the transfer on the grounds that the proceeding was not transferrable and that, even if it were, there would be good cause to deny the transfer.

On July 28, 2010, the juvenile court granted the tribe's motion to transfer. The juvenile court determined that ICWA applied to the proceeding and that good cause did not exist to deny the transfer.

On appeal, the GAL does not challenge the juvenile court's determination that ICWA generally applies to this proceeding. Instead, the GAL contends that the juvenile court erred by concluding that ICWA's transfer-of-jurisdiction provision permits the transfer of this preadoptive-placement proceeding to tribal court.[2]

## ISSUE

Is the juvenile court permitted to transfer to tribal court a preadoptive-placement proceeding involving an Indian child who is not domiciled or residing within the tribal reservation?

## ANALYSIS

"The application of a statute to essentially undisputed facts is a question of law that this court reviews de novo." *In re Welfare of Child of: T.T.B. & G.W.,* 724 N.W.2d 300, 307 (Minn.2006). The material facts are undisputed. Thus, the principal issue here is whether the juvenile court had the legal authority to grant the tribe's motion to transfer this preadoptive-placement proceeding to tribal court. We begin by examining the statutory scheme of ICWA and its Minnesota equivalent, MIFPA.[3]

ICWA was enacted in response to the "alarmingly high percentage" of Indian children who were being removed from Indian families by nontribal agencies and placed in non-Indian homes and institutions. 25 U.S.C. § 1901(4) (2006). ICWA's purpose is "to protect the best interests of Indian children and to preserve stability of the Indian tribe and family." *Gerber v. Eastman,* 673 N.W.2d 854, 856–57 (Minn.App.2004), *review denied* (Minn. Mar. 16, 2004). Similarly, MIFPA's purpose is to "provid[e] for participation by Indian tribes in the placement of their children." 1985 Minn. Laws ch. 111, title, at 306; *see also Essling v. Markman,* 335 N.W.2d 237, 240 (Minn.1983) (stating that courts may rely on the title of a statute as an indicator of legislative intent).

Both ICWA and MIFPA therefore apply whenever an "Indian child" is subject to a

---

**1.** It is clear from the record that, in fact, the parties are working to place S.S. in a temporary home prior to establishing her permanent home.

**2.** We note that the GAL does not challenge the juvenile court's conclusion that it lacked good cause to deny the transfer.

**3.** Because the relevant provisions of ICWA and MIFPA are virtually the same, and because the purposes of ICWA and MIFPA are complementary, we rely on case law interpreting ICWA to inform our interpretation of MIFPA.

"child custody proceeding," as is the case here.[4] *See In re Welfare of S.N.R.*, 617 N.W.2d 77, 80 (Minn.App.2000) (stating that ICWA applies to child-custody proceedings involving Indian children), *review denied* (Minn. Nov. 15, 2000). S.S. is an "Indian child" under ICWA and MIFPA because she is eligible for membership in the tribe and is the biological child of a member of the tribe. *See* 25 U.S.C. § 1903(4) (2006) (defining an "Indian child" in relevant part as a child who "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe"); Minn.Stat. § 260.755, subd. 8(2) (2010) (defining an "Indian child" in relevant part as a child who "is eligible for membership in an Indian tribe"). This is also a "child custody proceeding" under ICWA and MIFPA. *See* 25 U.S.C. § 1903(1) (2006) (defining a "child custody proceeding" as a proceeding for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement); Minn.Stat. § 260.755, subd. 3 (2010) (defining a "child placement proceeding" as a proceeding for involuntary foster care placement, termination of parental rights, preadoptive placement, or adoptive placement). More specifically, this is a preadoptive-placement proceeding. *See* 25 U.S.C. § 1903(1)(iii) (2006) (defining a "preadoptive placement" as involving "the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement"); Minn.Stat. § 260.755, subd. 3(c) (2010) (substantially same).[5]

Even though the GAL concedes that ICWA and MIFPA apply to this preadoptive-placement proceeding, she contends that neither ICWA nor MIFPA permits its transfer to tribal court. The resolution of this issue turns on the interpretation of ICWA's and MIFPA's transfer-of-jurisdiction provisions, which are virtually identical. *Compare* 25 U.S.C. § 1911(b) (2006), *with* Minn.Stat. § 260.771, subd. 3 (2010). Namely, ICWA provides that

> [i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe.

25 U.S.C. § 1911(b).

Similarly, MIFPA states that

> [i]n a proceeding for the termination of parental rights or involuntary foster care placement of an Indian child [who is not a domiciliary or a resident of a

---

**4.** ICWA uses the term "child custody proceeding," and MIFPA uses the term "child placement proceeding" to refer to the same types of matters. *Compare* 25 U.S.C.1903(1) (2006) (defining "child custody proceeding") *with* Minn.Stat. § 260.755, subd. 3 (2010) (defining a "child placement proceeding"). For clarity's sake, we use the term "child custody proceeding" from ICWA.

**5.** As a practical matter, a Minnesota termination-of-parental-rights proceeding adjudicates the termination of parental rights, temporary placement, and permanent placement. *See* Minn.Stat. § 260C.317, subd. 3(b) (2010)

(vesting juvenile court with continuing jurisdiction over a termination-of-parental-rights proceeding until the child is adopted or reaches the age of majority). But the various components of a Minnesota termination-of-parental-rights proceeding are distinct for the purposes of applying ICWA and MIFPA. *See In re Welfare of Children of R.M.B.*, 735 N.W.2d 348, 352 n. 6 (Minn.App.2007) (concluding that "[a]lthough Minnesota courts regard [child-in-need-of-protection-or-services and permanency] proceedings as a continuous proceeding for purposes of disqualifying a district court judge, they are considered separate proceedings for other purposes").

tribal reservation or a ward of the tribal court], the court, in the absence of good cause to the contrary, shall transfer the proceeding to the jurisdiction of the tribe absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe.

Minn.Stat. § 260.771, subd. 3.[6]

The juvenile court and the tribe interpret section 1911(b) to authorize the transfer of this proceeding to tribal court, absent good cause to deny the transfer. The GAL counters that section 1911(b) and section 260.771, subdivision 3, do not authorize, and in fact prohibit, the transfer of this proceeding to tribal court, regardless of whether good cause exists to deny the transfer. Specifically, the GAL argues that, under section 1911(b) and section 260.771, subdivision 3, only certain types of child-custody proceedings—namely, those for foster care placement and termination of parental rights—can be transferred to tribal court. Thus, the GAL contends that preadoptive placement proceedings— which are not listed in either of these provisions—are not transferable under ICWA or MIFPA.

 When interpreting a statute, we begin by determining "whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). If the statutory language is unambiguous, this court applies the statute's plain mean-

ing. *Brua v. Minn. Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn.2010). But if the statutory language is ambiguous, this court resorts to the canons of statutory construction. *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 759 (Minn.2010). The language of a statute is ambiguous only if it is susceptible of more than one reasonable interpretation. *Brayton v. Pawlenty,* 781 N.W.2d 357, 363 (Minn.2010).

We conclude that section 1911(b) and section 260.771, subdivision 3, are unambiguous with regard to the transfer of foster-care-placement and termination-of-parental-rights proceedings but are ambiguous with regard to the transfer of preadoptive-placement proceedings. These provisions clearly authorize the transfer of foster-care-placement and termination-of-parental-rights proceedings to tribal court. But because they are silent on the transfer of preadoptive-placement proceedings to tribal court, there is an ambiguity as to whether transfers of such proceedings are authorized, prohibited, or permitted by ICWA and MIFPA.

We begin our analysis by noting that both section 1911(b) and section 260.771, subdivision 3, plainly provide that, absent good cause or an objection by either parent, the state court must transfer to tribal court a proceeding for foster care placement or termination of parental rights involving an Indian child who is not domiciled or residing within the reservation.

---

**6.** The only difference between the two provisions is the use of the term "foster care placement" in section 1911(b), as opposed to "involuntary foster care placement" in section 260.771, subdivision 3. This difference is not substantive, however, because the definitions of "foster care placement" in ICWA and "involuntary foster care placement" in MIFPA are substantially the same. *Compare* 25 U.S.C. § 1903(1)(i) (2006) (ICWA definition of "foster care placement") *with* Minn.Stat. § 260.755, subd. 3(b) (2010) (MIFPA defini-

tion of "involuntary foster care placement"). Both terms refer to an action to remove an Indian child from his or her parents or Indian custodian and to place the child temporarily in a foster home or institution where the parent or Indian custodian cannot have the child returned upon demand, but when parental rights have not been terminated. *See* 25 U.S.C. § 1903(1)(i); Minn.Stat. § 260.755, subd. 3. For clarity's sake, we use the term "foster care placement" from ICWA.

25 U.S.C. § 1911(b); Minn.Stat. § 260.771, subd. 3. Our analysis is quickly complicated, however, by the fact that this proceeding was never one for foster care placement alone, and, given that parental rights were terminated in April 2010, it is no longer a proceeding for termination of parental rights. *See* 25 U.S.C. § 1903(1)(i) (2006) (defining "foster care placement"); Minn.Stat. § 260.755, subd. 3(b) (2010) (defining "involuntary foster care placement" substantially same); *see also* 25 U.S.C. § 1903(1)(ii) (2006) (defining "termination of parental rights"); Minn.Stat. § 260.755, subd. 3(d) (2010) (substantially same). Instead, this is now a proceeding for preadoptive placement. *See* 25 U.S.C. § 1903(1)(iii) (2006) (defining "preadoptive placement" as "the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement"); Minn.Stat. § 260.755, subd. 3(c) (2010) (substantially same).

But neither section 1911(b) nor section 260.771, subdivision 3, specifically addresses the transfer of preadoptive-placement proceedings. The parties implicitly argue that because section 1911(b) and section 260.771, subdivision 3, are silent regarding the transfer of preadoptive-placement proceedings, the provisions must be ambiguous. Thus, the parties strongly dispute whether—given this silence in the respective provisions—the juvenile court could, should, or must transfer this preadoptive-placement proceeding to the tribal court.

 "[S]ilence in a statute regarding a particular topic does not render the statute unclear or ambiguous unless the statute is susceptible of more than one reasonable interpretation." *Premier Bank,* 785 N.W.2d at 760. The court must determine "whether the statutory construction issue ... involves a failure of expression or an ambiguity of expression." *Id.* The court is forbidden from adding words or meaning that are "purposely omitted or inadvertently overlooked." *Id.* The court is only permitted to "go outside the language of the statute to determine legislative intent" if there is "more than one reasonable interpretation of the statute." *Id.* The parties have presented three interpretations of the silence in section 1911(b) and section 260.771, subdivision 3. As we explain below, we conclude that two of these interpretations are reasonable, that the provisions are therefore ambiguous, and that we must look outside the plain language of the statute to determination congressional and legislative intent.

### The transfer provisions do not authorize the transfer of preadoptive-placement proceedings.

 The tribe and the state contend that we can reasonably interpret the silence in section 1911(b) and section 260.771, subdivision 3, as *authorizing* the transfer of this preadoptive-placement proceeding to tribal court. *See In re M.S.,* 237 P.3d 161 (Okla.2010) (concluding that 25 U.S.C. § 1911(b) authorizes transfer of preadoptive-placement proceeding to tribal court). We disagree. It is clear that Congress and the Minnesota legislature omitted preadoptive-placement proceedings from section 1911(b) and section 260.771, subdivision 3, because they included only foster-care-placement and termination-of-parental-rights proceedings in these provisions. *See In re A.P.,* 289 Mont. 521, 962 P.2d 1186 (1998) (concluding that 25 U.S.C. § 1911(b) does not authorize transfer of preadoptive-placement proceeding to tribal court).

Had Congress or the Minnesota legislature intended to specifically authorize the transfer of preadoptive-placement proceedings to the tribal court through section 1911(b) or section 260.771, subdivision 3, they could have easily done so in one of

two ways. They could have specifically included preadoptive-placement proceedings in the transfer-of-jurisdiction provisions. *See* 25 U.S.C. § 1911(b) (presumptively requiring transfer of only foster-care-placement and termination-of-parental-rights proceedings to tribal court); Minn.Stat. § 260.771, subd. 3 (substantially same); *see also ILHC of Eagan, LLC v. Cnty. of Dakota,* 693 N.W.2d 412, 419 (Minn.2005) (stating that "the legislature must be presumed to have understood the effect of its words) (quotation omitted). Or they could have used the broader, more inclusive category of "child-custody proceedings," as they did in provisions establishing exclusive tribal court jurisdiction over proceedings involving Indian children who are domiciliaries or residents of the tribal reservation or wards of the tribal court. *See* 25 U.S.C. § 1911(a) (2006) (establishing exclusive tribal jurisdiction over "any child custody proceeding" involving an Indian child who resides or is domiciled within the tribal reservation or who is a ward of the tribal court); Minn.Stat. § 260.771, subd. 1 (2010) (substantially same); *see also ILHC,* 693 N.W.2d at 419 (stating that courts must "read a particular provision in context with other provisions of the same statute in order to determine the meaning of the particular provision"). Congress and the Minnesota legislature did neither, and we decline to read the transfer provisions so as to add words that were omitted during the legislative process. *See Premier Bank,* 785 N.W.2d at 760 (forbidding courts from interpreting statutes to "add[ ] words or meaning" that legislature "purposely omitted or inadvertently overlooked" (quotation omitted)).

**The transfer provisions do not prohibit the transfer of preadoptive-placement proceedings.**

The GAL, in contrast, argues that we can reasonably interpret the silence in section 1911(b) and section 260.771, subdivision 3, to indicate that Congress and the Minnesota legislature deliberately *prohibited* the transfer of this preadoptive-placement proceeding to tribal court. The GAL invokes the principle of *expressio unius est exclusio alterius,* a Latin phrase meaning that the expression of one thing is the exclusion of another. The GAL argues that because section 1911(b) and section 260.771, subdivision 3, explicitly authorize the transfer of foster-care-placement and termination-of-parental-rights proceedings, they should be read to implicitly prohibit the transfer of preadoptive-placement proceedings. 25 U.S.C. § 1911(b); Minn.Stat. § 260.771, subd. 3.

Although the GAL's interpretation of section 1911(b) and section 260.771, subdivision 3, is not wholly unreasonable, we nevertheless conclude that it is incorrect. We first note that "th[e] maxim [*expressio unius est exclusio alterius* ] is not of universal application, and great caution is needed in its application." *N. Pac. Ry. v. City of Duluth,* 243 Minn. 84, 88–89, 67 N.W.2d 635, 638 (1955). Under the GAL's interpretation of section 1911(b) and section 260.771, subdivision 3, state courts would be affirmatively prohibited from transferring preadoptive-placement proceedings to tribal courts. Stated differently, state courts would be required to exercise jurisdiction over such proceedings, and could not decline to exercise jurisdiction in favor of the tribal courts. Such an interpretation turns ICWA on its head. In adopting ICWA and MIFPA, Congress and the Minnesota legislature wanted to promote, not discourage, tribal-court decision-making in child-custody proceedings involving Indian families and children. *Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 36–37, 109 S.Ct. 1597, 1601–02, 104 L.Ed.2d 29 (1989). In our view, if Congress and the Minnesota legislature had intended to deviate from this goal and prohibit the transfer of preadop-

tive-placement proceedings to tribal courts, they would have done so explicitly, by including provisions to that effect; not implicitly, by omitting preadoptive-placement proceedings from the transfer-of-jurisdiction provisions. *See* 25 U.S.C. § 1911(b); Minn.Stat. § 260.771, subd. 3.

With respect to ICWA alone, the GAL argues that the silence in section 1911(b) regarding the transfer of preadoptive-placement proceedings to tribal courts is a result of Congress's efforts to balance tribal and state interests. Although this may well have been Congress's motivation for drafting section 1911(b) as it did, this argument does little to advance the GAL's position. It is conceivable that Congress omitted preadoptive-placement proceedings from section 1911(b) because it believed that a state's interest in the child is quite strong by that stage in the proceedings and that a federal statute requiring presumptive transfer of the proceeding to tribal court would infringe on the state's reserved powers. *See* U.S. Const. amend. X (stating that "powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the States"); 25 U.S.C. § 1911(b) (omitting preadoptive-placement proceedings in the transfer-of-jurisdiction provision). But the state's reserved powers would seem to include not only the right to exercise jurisdiction over child-custody matters, but concomitantly the right to *decline* to exercise jurisdiction in favor of other states or sovereigns under appropriate circumstances. *Cf. State of Ohio ex rel. Popovici v. Agler*, 280 U.S. 379, 384, 50 S.Ct. 154, 155, 74 L.Ed. 489 (1930) (stating that matters involving domestic relations are reserved to the states); *Reed v. Albaaj*, 723 N.W.2d 50, 56 (Minn.App.2006) (upholding district court's decision to exercise jurisdiction over child-custody matter); *Levinson v. Levinson*, 389 N.W.2d 761, 762 (Minn.App.1986) (upholding district court's decision to decline to exercise jurisdiction over child-custody matter). The GAL's interpretation of section 1911(b) would essentially deprive a Minnesota tribunal of the opportunity to decline to exercise its jurisdiction and would seriously interfere with Minnesota's exercise of its reserved powers.

## The transfer provisions leave a gap to be filled by the states.

Although we reject the tribe's and the state's argument that section 1911(b) and section 260.771, subdivision 3, authorize the transfer of preadoptive-placement proceedings to tribal court, these parties alternatively contend that section 1911(b) and section 260.771, subdivision 3, neither authorize nor prohibit the transfer of a preadoptive-placement proceeding to tribal court, but instead leave a "gap" as to whether such proceedings can be transferred to tribal court. That "gap," they argue, can and should be filled by reference to the policies underlying the passage of ICWA and other state sources of law. We conclude that this is the proper interpretation of section 1911(b) and section 260.771, subdivision 3.

Initially, this interpretation is consistent with the principle that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766, 105 S.Ct. 2399, 2403, 85 L.Ed.2d 753 (1985). This interpretation is also in accord with the overall purpose and scheme of ICWA and MIFPA, which responded to the large-scale removal of Indian children from Indian families and tribes and their placement in non-Indian families and communities by establishing statutory schemes that favor tribal decision-making in child-custody determinations regarding Indian children. *See Holyfield*, 490 U.S. at 34–37, 109 S.Ct. at 1600–01 (discussing purposes of ICWA). Finally, this interpretation comports with

the long-standing understanding that ICWA and MIFPA establish "concurrent, but presumptively tribal jurisdiction" over child custody proceedings involving Indian children who are not domiciliaries or residents of the tribal reservation. *See id.* at 36, 109 S.Ct. at 1602 (stating that section 1911(b) recognizes concurrent state and tribal jurisdiction with regard to Indian children who are located off the reservation); *T.T.B.*, 724 N.W.2d at 305 (stating that section 1911(b) and section 260.771, subdivision 3, recognize the same).[7] We therefore conclude that section 1911(b) and section 260.771, subdivision 3, leave a gap with regard to the transfer of preadoptive-placement proceedings. That gap, in turn, is to be filled by other state sources of law which could authorize the transfer of pre-adoptive-placement proceedings to Indian tribes with concurrent jurisdiction.

**Other state authority permits the transfer of preadoptive-placement proceedings.**

We are left then to examine other state authorities to determine whether the juvenile court had the authority to transfer this preadoptive-placement proceeding to tribal court. The tribe and the county cite three authorities that purportedly authorize the juvenile court's decision to grant the tribe's motion for transfer: (1) a February 22, 2007, agreement between the state and the tribe (tribal-state agreement); (2) the Minnesota Department of Human Services manual (DHS manual); and (3) the Minnesota Rules of Juvenile Protection Procedure (rules). Because we conclude that the rules authorize the transfer of this preadoptive-placement proceeding to tribal court, we do not address whether the tribal-state agreement and the DHS manual provide additional authority for the juvenile court's transfer order.

Absent an objection from either parent or good cause, the juvenile court shall transfer a "juvenile protection matter" involving an Indian child upon a motion from the Indian child's parent, Indian custodian, or tribe. Minn. R. Juv. Prot. P. 48.01, subd. 3. A "juvenile protection matter" includes post-termination-of-parental-rights "permanent placement matters." *See* Minn. R. Juv. Prot. P. 2.01(14) (definition of juvenile protection matter); Minn.Stat. § 260C.201 (2010) (discussing post-termination permanent placements). The rule's comments further explain that "[ICWA] does not preclude the transfer of matters to tribal court following termination of parental rights," and the rules "recognize[ ] the practice of transferring the cases to the tribe after termination of parental rights." Minn. R. Juv. Prot. P. 48.01, cmt.

The GAL concedes that, based on the rules, the juvenile court was apparently authorized to transfer this preadoptive-placement proceeding to tribal court. But the GAL contends that the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Minn. Stat. §§ 518D.101–.317 (2010), not the rules, govern jurisdiction over this pre-adoptive-placement proceeding. UCCJEA was adopted for the purpose of resolving jurisdictional issues that arise in interstate child-custody disputes. *Stone v. Stone*, 636 N.W.2d 594, 597 (Minn.App.2001). The drafters of UCCJEA contemplated that UCCJEA would be relevant to certain child-custody determinations involving Indian children because it provided that Minnesota courts are to "treat a tribe as if it were a state . . . for the purpose of applying [UCCJEA]." Minn.Stat. § 518D.104(b). But they specifically provided that UCCJEA does not apply to child-custody proceedings "to the extent

---

**7.** "Concurrent jurisdiction describes a situation where two or more tribunals are authorized to hear and dispose of a matter." *Gavle v. Little Six, Inc.,* 555 N.W.2d 284, 290 (Minn. 1996).

that [they are] governed by [ICWA]." Minn.Stat. § 518D.104(a). In this situation, however, because ICWA does not squarely address whether the juvenile court can transfer this preadoptive-placement proceeding to tribal court, the tribe's motion to transfer jurisdiction is arguably subject to UCCJEA. *See id.;* 25 U.S.C. § 1911(b) (omitting preadoptive-placement proceedings in the transfer-of-jurisdiction provision).

We nonetheless reject the GAL's position. Rules of procedure generally control over statutes on matters of procedural, as opposed to substantive, law. *See In re Welfare of J.R., Jr.,* 655 N.W.2d 1, 3 (Minn.2003) (concluding that then-existing Minnesota Rules of Juvenile Procedure controlled over conflicting statutes regarding procedural law). The question here is whether the provisions regarding the transfer of jurisdiction are procedural or substantive. Procedural law "neither creates a new cause of action nor deprives defendant of any defense on the merits." *Stern v. Dill,* 442 N.W.2d 322, 324 (Minn. 1989) (quotation omitted). Substantive law, in contrast, "creates, defines, and regulates rights." *Id.* (quotation omitted). A

transfer of jurisdiction will alter the identity of the decisionmaker in this preadoptive-placement proceeding, but it will not change the basic purpose of the preadoptive-placement proceeding—to identify a permanent home that is in the best interests of S.S. For this reason, we conclude that the transfer of jurisdiction is a procedural issue and that, to the extent that both the rules and UCCJEA are germane to the tribe's motion to transfer, the rules trump UCCJEA and permit the transfer of this preadoptive-placement proceeding to tribal court.[8]

### DECISION

Although neither ICWA nor MIFPA authorizes the transfer of this preadoptive-placement proceeding to tribal court, the rules of juvenile protection procedure do so. We therefore affirm, on different grounds, the juvenile court's decision to grant the tribe's motion to transfer.

**Affirmed.**

---

8. We also note that even if UCCJEA were applicable, the GAL would not necessarily prevail. The GAL contends that UCCJEA vests the state court with "exclusive, continuing jurisdiction" over this preadoptive-placement proceeding because it has already made a child-custody determination regarding S.S. Minn.Stat. § 518D.202(a) (2010). But the GAL ignores the fact that, even in those cases in which a juvenile court has exclusive, continuing jurisdiction, UCCJEA also allows the juvenile court to "decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a [tribal court] is a more appropriate forum." Minn.Stat. § 518D.207(a) (2010); *see also* Minn.Stat. § 518D.104(b) (2010) (stating that a tribe is to be treated as if it were a state for the purposes of applying UCCJEA). Thus, even if UCCJEA applied, the state court would still be permitted to decline to exercise its jurisdiction in favor of the tribal court, although it would first have to consider the factors enumerated in UCCJEA. Minn.Stat. § 518D.207(a), (b) (2010).